**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| D.F., | |
| *Plaintiff,* | CIVIL ACTION<br>NO. 25-5003 |
| v. | |
| **ORGANIZING FOR AMERICA; DNC SERVICES CORPORATION A/K/A DEMOCRATIC NATIONAL COMMITTEE D/B/A ORGANIZING FOR AMERICA; BRENDAN J KILLACKEY; JOHN DOES 1-5; ABC CORPORATIONS 1-5** | **JURY TRIAL DEMANDED** |
| Defendants. | |

———————————

**PLAINTIFF'S FIRST AMENDED COMPLAINT**

———————————

Plaintiff, D.F., by and through her undersigned counsel, Jay L. Edelstein, Esquire, Edelstein Law, LLP, hereby files her First Amended Complaint, demands damages from the above-captioned Defendants upon the causes of action set forth below.

I.    **INTRODUCTION**

1.    Grooming is a deliberate and often prolonged process by which perpetrators manipulate victims—especially minors or other vulnerable individuals—into situations of exploitation, abuse, or sexual misconduct. The process typically involves gaining the trust of the victim, desensitizing them to inappropriate behavior, isolating them from potential protectors, and

creating dependency. Craven[1] et al., 2006; McAlinden[2], 2012; Erooga[3] et al., 2012; Whittle[4] et al., 2013.

2.      There are five key stages to grooming: (1) targeting the victim, (2) gaining access and isolating the victim, (3) developing trust, (4) desensitization to sexual content and touch, and (5) maintenance and concealment of the abuse. This progression underscores the calculated nature of grooming, distinguishing it from spontaneous acts of abuse and highlighting the strategic manipulation of both the victim and their surroundings. Craven, et al., (2006).

3.      In the summer of 2012, in a political campaign setting created and supervised by ORGANIZING FOR AMERICA, BRENDAN KILLACKEY, age 38, manipulated the environment to groom D.F., age 16, into a predatory and non-consensual sexual relationship.

4.      At all times relevant hereto, ORGANIZING FOR AMERICA functioned as a division or arm of the DEMOCRATIC NATIONAL COMMITTEE.

5.      At all times relevant hereto, members of the political campaign ORGANIZING FOR AMERICA and the DEMOCRATIC NATIONAL COMMITTEE knew or should have known that BRENDAN KILLACKEY used his position and influence within the campaign to groom D.F. – a 16-year-old high school student volunteer – for a sexually abusive and illicit relationship.

6.      At all times relevant hereto, members of the political campaign for ORGANIZING FOR AMERICA and the DEMOCRATIC NATIONAL COMMITTEE knew or should have known that BRENDAN KILLACKEY targeted Plaintiff D.F., isolated her, corrupted her morals, furnished

---

[1] Craven, S., Brown, S., & Gilchrist, E. (2006). *Sexual grooming of children: Review of literature and theoretical considerations. Journal of Sexual Aggression*, 12(3), 287–299.
[2] McAlinden, A.-M. (2012). *'Grooming' and the sexual abuse of children: Institutional, Internet and familial dimensions*. Oxford Journal of Legal Studies, 32(3), 595–617.
[3] Erooga, M., Allnock, D., & Telford, P. (2012). *Towards safer organisations: Adults who pose a risk to children in the workplace and implications for recruitment and selection*. NSPCC.
[4] Whittle, H., Hamilton-Giachritsis, C., Beech, A., & Collings, G. (2013). *A review of online grooming: Characteristics and concerns*. Aggression and Violent Behavior, 18(1), 62–70.

her with alcohol, desensitized her to sexual acts, committed sexual acts against her will, and attempted to conceal this sexually abusive and illicit relationship.

## II.    PARTIES

7.    Plaintiff, D.F. (hereinafter "PLAINTIFF" or "D.F."), is an adult citizen and resident of Pennsylvania and is proceeding under a pseudonym, who can be contacted through her attorney at 230 S. Broad Street, Suite 900, Philadelphia, PA 19102.

8.    Defendant ORGANIZING FOR AMERICA was/is a corporate or jural entity, duly organized and operating under the laws of the District of Columbia (Washington, D.C.), operating as a nonprofit political organization under Section 527 of the Internal Revenue Code with a corporate headquarters at 430 South Capitol Street SE, Washington, D.C. 20003, and at all times relevant hereto regularly conducted business in the Commonwealth of Pennsylvania, at 234 Mill Street, Bristol, Pennsylvania 19007.

9.    Defendant DNC SERVICES CORPORATION A/K/A DEMOCRATIC NATIONAL COMMITTEE D/B/A ORGANIZING FOR AMERICA was/is a corporate or jural entity, duly incorporated, organized and operating under the laws of the District of Columbia (Washington, D.C.), operating as a nonprofit political organization under Section 527 of the Internal Revenue Code with a corporate headquarters at 430 South Capitol Street SE, Washington, D.C. 20003, and at all times relevant hereto regularly conducted business in the Commonwealth of Pennsylvania, at 234 Mill Street, Bristol, Pennsylvania 19007.

10.    Defendant BRENDAN J. KILLACKEY, upon information and belief, was an individual citizen and resident of the Commonwealth of Pennsylvania, is currently an individual citizen and resident of the State of Texas, and resides at 922 Peden Street, Houston, Texas 77006-1339.

3

11.     The true name(s) and capacity(ies) of defendants JOHN DOES 1-5 is/are not yet known to Plaintiff.  Therefore, Plaintiff has sued JOHN DOES 1-5 under a fictitious name.  When the actual identities of the JOHN DOES 1-5 defendants is/are determined, Plaintiff intends to amend this Complaint to name such entity(ies).  At all times relevant, JOHN DOES 1-5 were employees, administrators, staff, agents, contractors, and/or other campaign personnel employed and/or retained by Defendants ORGANIZING FOR AMERICA and/or DNC SERVICES CORPORATION A/K/A DEMOCRATIC NATIONAL COMMITTEE D/B/A ORGANIZING FOR AMERICA, acting within the course and scope of those relationships, jointly and/or severally.  JOHN DOES1-5 were responsible for the personnel, policies and procedures relating to hiring, supervising, managing, training and conducting oversite of employees, including Defendant KILLACKEY. At all times relevant, defendants ABC CORPORATIONS 1-5 are or were individuals who caused or contributed to the series of events that led to the underlying causes of action hereinafter referred to below.

12.     Pursuant to Pa. R.C.P. 2005, Plaintiff, after reasonable investigation, has been unable to determine the name(s) of any such individuals or the like and the JOHN DOES 1-5 designation is averred to be fictitious.

13.     The true name(s) and capacity(ies) of defendants ABC CORPORATIONS 1-5 is/are not yet known to Plaintiff.  Therefore, Plaintiff has sued ABC CORPORATIONS 1-5 under a fictitious name.  When the actual identities of the ABC CORPORATIONS 1-5 defendants is/are determined, Plaintiff intends to amend this Complaint to name such entity(ies).  At all times relevant, the ABC CORPORATIONS 1-5 defendants were nonprofit political organization(s) under Section 527 of the Internal Revenue Code, subsidiaries and/or corporations, professional corporations, professional associations, professional partnerships, and/or other jural entities

organized and existing under the laws of the Commonwealth of Pennsylvania responsible for the personnel, policies and procedures relating to the operations of Defendants ORGANIZING FOR AMERICA and/or DNC SERVICES CORPORATION A/K/A DEMOCRATIC NATIONAL COMMITTEE D/B/A ORGANIZING FOR AMERICA and acted within the course and scope of those relationships, jointly and/or severally. The ABC CORPORATIONS 1-5 defendants were responsible for the personnel, policies and procedures relating to hiring, supervising, managing, training and conducting oversite of employees, including Defendant KILLACKEY. At all times relevant, defendants ABC CORPORATIONS 1-5 are or were individuals who caused or contributed to the series of events that led to the underlying causes of action hereinafter referred to below.

14.     Pursuant to Pa. R.C.P. 2005, Plaintiff, after reasonable investigation, has been unable to determine the name(s) of any such entities and/or vendors, contractors, subcontractors, subsidiaries, or the like and the ABC CORPORATIONS 1-5 designation is averred to be fictitious

15.     Defendants ORGANIZING FOR AMERICA and/or DNC SERVICES CORPORATION A/K/A DEMOCRATIC NATIONAL COMMITTEE D/B/A ORGANIZING FOR AMERICA, JOHN DOES 1-5, and ABC CORPORATIONS 1-5 are hereinafter referred to as "OFA DEFENDANTS."

16.     At all times relevant hereto, OFA DEFENDANTS owned, operated, managed, controlled, supervised, and/or maintained multiple campaign offices, including a campaign office at 234 Mill Street, Bristol, Pennsylvania 19007. This campaign office, including its employees, staff, and volunteers, are hereinafter referred to as "OFA-BRISTOL."

17.     At all times relevant hereto, Defendant KILLACKEY was an actual, apparent or ostensible agent, servant, and/or employee of OFA DEFENDANTS and was acting within the scope

of his agency and/or employment for OFA DEFENDANTS while hiring, supervising, managing, training, and conducting oversite of employees and/or personnel.

18.    At all relevant times hereto, Defendants named above acted individually and/or by and through their duly authorized actual agents, apparent agents, ostensible agents, servants, employees and/or contractors acting within the course and scope of their actual and/or apparent authority, agency and/or employment.

19.    The negligence and recklessness of all defendants, jointly and severally, in their responsibility for the personnel, policies and procedures relating to hiring, supervising, managing, training and conducting oversite of employees, as set forth below, caused, and/or increased the risk of, harm to Plaintiff.

20.    The negligence and recklessness of all defendants, jointly and severally, arising from their responsibility for all personnel described herein, as well as the policies and procedures relating to hiring, supervising, managing, training and conducting oversite of employees.

21.    All defendants herein are vicariously liable to Plaintiff for injuries sustained arising from their responsibility for the conduct of all personnel described herein, as well as the policies and procedures relating to hiring, supervising, managing, training and conducting oversite of employees.

22.    Plaintiff's injuries and damages were the direct result of the negligence and recklessness of all defendants, and/or their agents, servants and/or employees arising from their responsibility for all personnel described herein, as well as the policies and procedures relating to hiring, supervising, managing, training and conducting oversite of employees.

23.     Plaintiff 's injuries and damage were due in no manner, whatsoever, to the failure to act on the part of Plaintiff, or any person other than the Defendants and/or their agents, servants, and/or employees.

## II.     JURISDICTION AND VENUE

24.     This action was removed to the Federal District Court of the Eastern District of Pennsylvania .under diversity jurisdiction.

## III.     OPERATIVE FACTS

### A.     ORGANIZING FOR AMERICA

25.     Upon information and belief, ORGANIZING FOR AMERICA was a community organizing and advocacy arm of the DNC SERVICES CORPORATION a/k/a DEMOCRATIC NATIONAL COMMITTEE and the Democratic Party which was launched by President Barack Obama in 2009.

26.     Upon information and belief, ORGANIZING FOR AMERICA was born out of "Obama For America," the campaign team that helped elect President Obama in 2008.

27.     Upon information and belief, in January 2009, "Obama For America" transitioned into the DEMOCRATIC NATIONAL COMMITTEE under the name ORGANIZING FOR AMERICA.

28.     Upon information and belief, while headquartered in Washington, D.C., OFA DEFENDANTS operated through state-level chapters, with many staffed by paid regional directors but many also heavily driven by volunteer engagement.

29.     Upon information and belief, OFA DEFENDANTS' main goal was to mobilize grassroots support for President Obama's legislative priorities.

30.    Upon information and belief, OFA DEFENDANTS organized campaigns involving phone banks, canvassing, letter-writing, and local events, including the offices at OFA-BRISTOL.

31.    Upon information and belief, OFA DEFENDANTS maintained a robust presence in Bucks County, Pennsylvania, recognizing it as a crucial swing county in a key battleground state.

32.    Upon information and belief, OFA DEFENDANTS deployed a "neighborhood team" model, empowering local volunteers to take ownership of outreach efforts. Bucks County had several well-organized neighborhood teams across areas like Doylestown, Bensalem, Warminster and Bristol, Pennsylvania.

33.    Upon information and belief, OFA DEFENDANTS hired "Field Organizers" who recruited politically active high school students—especially juniors and seniors—to act as campus ambassadors. These students organized voter registration drives at lunch periods, recruited classmates to phonebank or canvass, and coordinated rides to weekend campaign events.

34.    Upon information and belief, OFA DEFENDANTS connected with student organizations (i.e., student councils, Key Clubs, and National Honor Society chapters) to offer volunteer opportunities that could count toward community service hours, which was a graduation requirement in many Bucks County school districts.

35.    Upon information and belief, while most of OFA DEFENDANTS' campaign staff were college age or older, OFA DEFENDANTS high school juniors and seniors were recruited as fellows or junior interns. They were given tasks like organizing events, phone-banking, canvasing, and training volunteers.

36.    Upon information and belief, many, if not the majority, of OFA DEFENDANTS' high school volunteers were minors, i.e., under the age of eighteen (18).

37.    Under Pennsylvania law, a person under the age of eighteen (18) is a minor. <u>See</u>

Act of Nov. 26, 2019, P.L. 641, No. 87 ("Act 87 of 2019"); 23 Pa.C.S.A. Chapter 63 et seq.

38.    Pennsylvania's Child Protective Services Law provides:

> (a) Mandated reporters.--The following adults shall make a report of suspected child abuse, subject to subsection (b), if the person has reasonable cause to suspect that a child is a victim of child abuse:
>
> > (7) An individual paid or unpaid, who, on the basis of the individual's role as an integral part of a regularly scheduled program, activity or service, is a person responsible for the child's welfare or has direct contact with children.

<u>See</u> 23 Pa.C.S.A. § 6311.

39.    Thus, under Section 6311(a)(7), an "individual paid or unpaid" who, through a

"regularly scheduled program, activity, or service," accepts responsibility for a child is designated

a mandated reporter of suspected child abuse. <u>Id.</u>

40.    Pennsylvania's statutory definition of "child abuse" provides, in pertinent part:

> (b.1) Child abuse.--The term "child abuse" shall mean intentionally, knowingly or recklessly doing any of the following:
>
> > (1) Causing bodily injury to a child through any recent act or failure to act.
> >
> > (3) Causing or substantially contributing to serious mental injury to a child through any act or failure to act or a series of such acts or failures to act.
> >
> > (4) Causing sexual abuse or exploitation of a child through any act or failure to act.
> >
> > (5) Creating a reasonable likelihood of bodily injury to a child through any recent act or failure to act.
> >
> > (6) Creating a likelihood of sexual abuse or exploitation of a child through any recent act or failure to act.

<u>See</u> 23 Pa.C.S.A. § 6303(b.1).

41.    Defendants ORGANIZING FOR AMERICA and/or DNC SERVICES CORPORATION A/K/A DEMOCRATIC NATIONAL COMMITTEE D/B/A ORGANIZING FOR AMERICA, JOHN DOES 1-5, and ABC CORPORATIONS 1-5 were subject to the provisions of 23 Pa.C.S.A. § 6311 et. seq. and 23 Pa.C.S.A. § 6303(b.1) et. seq.

42.    Upon information and belief, ORGANIZING FOR AMERICA and/or DNC SERVICES CORPORATION A/K/A DEMOCRATIC NATIONAL COMMITTEE D/B/A ORGANIZING FOR AMERICA, JOHN DOES 1-5, and ABC CORPORATIONS 1-5 did not have any policies, procedures, and/or training as to sexual harassment, sexual misconduct, reporting laws, reporting processes, and/or employee conduct pertaining to minors and minor volunteers.

B.    **PLAINTIFF D.F. VOLUNTEERS FOR OFA-BRISTOL, WHERE SHE FIRST MEETS DEFENDANT KILLACKEY**

43.    Defendant KILLACKEY was born in March 1974.

44.    At all times relevant hereto, Defendant KILLACKEY was employed as a "Field Organizer" of OFA-DEFENDANTS and worked out of OFA-BRISTOL.

45.    In April 2012, Plaintiff D.F. was a sixteen-year-old junior at Bristol Junior-Senior High School, at 1801 Wilson Ave, Bristol, Pennsylvania 19007.

46.    Upon information and belief, in or around April 2012, OFA DEFENDANTS identified Bristol Junior-Senior High School as one of their targets for youth volunteers for the campaign.

47.    Plaintiff D.F. was politically active and genuinely interested in supporting OFA DEFENDANTS' campaign.

48.    Towards the end of April 2012, Plaintiff D.F. visited OFA-BRISTOL for the first time.

49.    Plaintiff signed up as an "Organizing Fellow" of OFA DEFENDANTS campaign, which was an unpaid internship organized in coordination with Bristol Junior-Senior High School.

50.    Upon information and belief, Defendant KILLACKEY was not present during Plaintiff D.F.'s first visit.

51.    In May 2012, Plaintiff D.F. visited OFA-BRISTOL for a second time.

52.    Defendant KILLACKEY, then aged thirty-eight (38), was present.

53.    Defendant KILLACKEY introduced himself to Plaintiff D.F., age sixteen (16).

54.    In words or substance, Defendant KILLACKEY explained that he was a "Field Operative" for OFA DEFENDANTS.

55.    In words or substance, Defendant KILLACKEY was openly complimentary and flirtatious with Plaintiff D.F.

56.    Upon information and belief, Defendant KILLACKEY took an immediate and unusual interest in Plaintiff D.F.

57.    In early June, OFA DEFENDANTS hosted a one-day training session for Southeastern Pennsylvania "Organizing Fellows" in Norristown, Pennsylvania.

58.    OFA DEFENDANTS' training included canvasing, phone-banking, and data entry.

59.    Defendant KILLACKEY was present for Plaintiff D.F.'s orientation.

60.    Defendant KILLACKEY continued to vocalize and/or display his interest in Plaintiff D.F.

61.    At one point, in words or substance, Plaintiff D.F. made a joke in front of the group about Defendant KILLACKEY being old.

62.    BRENDAN McPHILLIPS, Field Director for OFA DEFENDANTS and/or OFA-BRISTOL was present and overheard the joke.

11

63.     In words or substance, McPHILLIPS said "that's not nice."

64.     In words or substance, Defendant KILLACKEY said "it's fine."

65.     Plaintiff D.F. would later apologize for the joke in private.

66.     Upon information and belief, this interaction between Plaintiff D.F. and Defendant KILLACKEY was witnessed by multiple staff members of OFA-BRISTOL, including:

      a.     BRENDAN MCPHILLIPS, Field Director

      b.     DAN SIEGEL, Field Director (Montgomery County)

      c.     MEGHAN BLICKMAN, Field Organizer

      d.     MAX WEISS, Field Organizer

      e.     SARAH VERBOSKY (now WEBSTER-MELLON), Field Organizer

      f.     LINDSEY WARREN-SHRINER, Field Organizer

## C.     **DEFENDANT KILLACKEY GROOMS PLAINTIFF D.F., A MINOR**

67.     During the Spring and Summer of 2012, while she was still sixteen (16) years of age, Plaintiff D.F. would volunteer between 10 to 15 hours per week at OFA-BRISTOL, with some weeks totaling 30 hours or more.

68.     Upon information and belief, when Plaintiff D.F. was physically present at OFA-BRISTOL, Defendant KILLACKEY was also there most of the time.

69.     On her first day as a "Organizing Fellow" at OFA-BRISTOL, Plaintiff D.F. entered the campaign offices at OFA-BRISTOL.

70.     Plaintiff D.F. had just finished high school field hockey practice and was wearing a sweatshirt that read "Bristol High School Field Hockey."

71.     Plaintiff D.F. encountered Defendant KILLACKEY.

72.    In words or substance, Defendant KILLACKEY made multiple complimentary remarks regarding Plaintiff D.F.'s sweatshirt.

73.    In words or substance, Defendant KILLACKEY told Plaintiff D.F that he really liked her sweatshirt.

74.    Defendant KILLACKEY consistently, repeatedly, and openly used the word "precocious" to describe Plaintiff D.F., a minor, in front of OFA-BRISTOL staff.

75.    "Precocious" has been defined as by Merriam Webster as:

    1 : exceptionally early in development or occurrence
    *precocious* puberty

    2 : exhibiting mature qualities at an unusually early age
    a *precocious* child

76.    Defendant KILLACKEY consistently, repeatedly, and openly complimented Plaintiff D.F., a minor,  in front of OFA-BRISTOL staff.

77.    Defendant KILLACKEY consistently, repeatedly, and openly flirted with Plaintiff D.F., a minor, in front of OFA-BRISTOL staff.

78.    Upon information and belief, in the weeks that followed, Defendant KILLACKEY's interest in and attention given to Plaintiff D.F. grew stronger and more frequent.

79.    Upon information and belief, Defendant KILLACKEY began to pay an exorbitant amount of attention to Plaintiff D.F.

80.    Upon information and belief, Defendant KILLACKEY purportedly took an interest in Plaintiff D.F.'s daily life and her aspirations for the future.

81.    Upon information and belief, Defendant KILLACKEY consistently complimented Plaintiff D.F.'s appearance, intelligence, and/or interests.

82.    Upon information and belief, Defendant KILLACKEY's remarks, flirtations, and advances towards Plaintiff D.F. were witnessed, overheard and/or otherwise observed by staff members of OFA-BRISTOL.

83.    Upon information and belief, Defendant KILLACKEY's misconduct was part of an effort to make Plaintiff D.F. feel special.

84.    Upon information and belief, Defendant KILLACKEY's misconduct was part of an effort to make Plaintiff D.F. feel pretty.

85.    Upon information and belief, Defendant KILLACKEY's misconduct was part of an effort to make Plaintiff D.F. feel intelligent.

86.    Upon information and belief, Defendant KILLACKEY's misconduct was part of an effort to make Plaintiff D.F. feel comfortable with him.

87.    Upon information and belief, Defendant KILLACKEY's misconduct prayed on Plaintiff D.F.'s vulnerabilities.

88.    At all times relevant hereto, Defendant KILLACKEY groomed Plaintiff D.F. for sexual exploitation and abuse.

89.    At all times relevant hereto, Defendant KILLACKEY used his status with the political campaign at OFA-BRISTOL, and his status with OFA DEFENDANTS, to groom Plaintiff D.F. for eventual sexual exploitation and abuse.

## C.    DEFENDANT KILLACKEY INITIATES AND CONTINUES A SEXUAL RELATIONSHIP WITH PLAINTIFF D.F., A MINOR

### i.    JUNE 2012

90.    One evening during the end of June 2012, while Plaintiff D.F. was still sixteen (16) years of age, Plaintiff D.F. was volunteering at OFA-BRISTOL's campaign office.

91.     As Plaintiff D.F.'s shift came to an end, in words or substance, she openly asked the OFA-BRISTOL staff whether anyone was available to give her a ride home.

92.     Defendant KILLACKEY was present, along with other OFA-BRISTOL staff.

93.     Defendant KILLACKEY openly offered to give Plaintiff D.F. a ride home.

94.     Upon information and belief, Defendant KILLACKEY's offer of a ride home to Plaintiff D.F. were witnessed, overheard and/or otherwise observed by staff members of OFA-BRISTOL.

95.     Defendant KILLACKEY escorted Plaintiff D.F. to his car, which was parked in the OFA-BRISTOL parking lot.

96.     Defendant KILLACKEY began to flirt with Plaintiff D.F. in the car, which was parked in the OFA-BRISTOL parking lot.

97.     During the car ride, Plaintiff D.F. apologized for joking about Defendant KILLACKEY's age during orientation earlier that month.

98.     In words or substance, Plaintiff D.F. told Defendant KILLACKEY that she has to remind herself how old he is because she thought she may have a crush on him.

99.     Rather than respond to a minor as an adult should, Defendant KILLACKEY pulled the car over and parked.

100.    Defendant KILLACKEY began touching Plaintiff D.F. without her consent.

101.    Defendant KILLACKEY began rubbing Plaintiff D.F.'s leg without her consent.

102.    In words or substance, Defendant KILLACKEY asked Plaintiff D.F. if she was "wet."

103.    Upon information and belief, Defendant KILLACKEY had a visible erection.

104.    The two did not have sexual intercourse at that time.

ii.    <u>**JULY 2012**</u>

105.    On or about July 3, 2012, OFA-BRISTOL tasked Defendant KILLACKEY with a canvasing trip for the Obama Campaign throughout Bristol Township, Pennsylvania.

106.    Upon information and belief, Defendant KILLACKEY wanted Plaintiff D.F. to join him.

107.    Defendant KILLACKEY asked members of OFA-BRISTOL's campaign staff whether Plaintiff D.F. could accompany him on the canvasing trip

108.    Those OFA-BRISTOL staff members included

    a.    BRENDAN MCPHILLIPS, Field Director

    b.    LINDSEY WARREN-SHRINER, Field Organizer

109.    Members of OFA-BRISTOL's campaign staff approved the canvasing trip between Defendant KILLACKEY and Plaintiff D.F., included:

    a.    BRENDAN MCPHILLIPS, Field Director

    b.    LINDSEY WARREN-SHRINER, Field Organizer

110.    For a period of at least four (4) hours, Defendant KILLACKEY and Plaintiff D.F. rode around Bristol Township canvasing for votes and/or voter registration.

111.    During the canvasing trip, Defendant KILLACKEY was complimentary and flirtatious with Plaintiff D.F.

112.    Upon information and belief, Defendant KILLACKEY and Plaintiff D.F. approached one of the residents Bristol Township, and, in words or substance, the resident asked the two of them, "Are you guys together" and/or "Are you guys a couple?"

113.    When Defendant KILLACKEY and Plaintiff D.F. finished canvasing, they returned to OFA-BRISTOL's campaign office.

114.    Upon information and belief, none of the OFA-BRISTOL campaign staff publicly questioned the multi-hour canvasing trip of 38-year-old Defendant KILLACKEY and 16-year-old Plaintiff D.F. without any other person present.

115.    Upon information and belief, none of the OFA-BRISTOL campaign staff asked how the canvasing trip went.

116.    On the next day, July 4, 2012, at Defendant KILLACKEY's invitation, Plaintiff attended a celebratory barbeque organized by OFA-BRISTOL campaign staff.

117.    In addition to Defendant KILLACKEY, in attendance at the campaign barbeque were:

     a.    BRENDAN MCPHILLIPS, Field Director

     b.    DAN SIEGEL, Field Director (Montgomery County)

     c.    MEGHAN BLICKMAN, Field Organizer

     d.    MAX WEISS, Field Organizer

     e.    SARAH VERBOSKY (now WEBSTER-MELLON), Field Organizer

     f.    LINDSEY WARREN-SHRINER, Field Organizer

118.    Upon information and belief, Defendant KILLACKEY's delays in advancing his predatory relationship was purposeful and calculated.

119.    Defendant KILLACKEY began providing Plaintiff D.F. with a number of gifts, including books like *Homer to Joyce,* which was part of the core curriculum at Columbia University, where Defendant KILLACKEY attended and Plaintiff D.F. dreamed of attending.

120.    Upon information and belief, some of Defendant KILLACKEY's gifts to Plaintiff D.F. were given to her at the OFA-BRISTOL campaign office in plain view of OFA-BRISTOL campaign staff.

121.    Approximately two weeks later, Plaintiff D.F. attended a party with her friends.

122.    Plaintiff D.F. needed a ride home, so she texted Defendant KILLACKEY requesting a ride.

123.    Defendant KILLACKEY picked her up at the party.

124.    Upon Plaintiff D.F. entering the car, Defendant KILLACKEY drove to the next town, where he parked near a basketball court, and initiated heavy touching and kissing without Plaintiff D.F.'s consent.

125.    Later in July 2012, after working together at OFA-BRISTOL, Defendant KILLACKEY brought Plaintiff to his apartment located at 1505 Bridgetown Pike, Langhorne, Pennsylvania 19053.

126.    They were alone.

127.    Once inside, Defendant KILLACKEY pulled Plaintiff D.F.'s pants down.

128.    Defendant KILLACKEY proceeded to initiate sexual intercourse with Plaintiff D.F.

129.    Defendant KILLACKEY did not have and/or did not use a condom.

130.    In words or substance, Plaintiff D.F. asked Defendant KILLACKEY to slow down.

131.    In words or substance, Plaintiff D.F. told Defendant KILLACKEY that she was scared.

132.    Defendant KILLACKEY held Plaintiff D.F. and patted her on the back, while continuing to have sexual intercourse with her.

133.    In words or substance, Defendant KILLACKEY called her a "silly little girl."

134.    Plaintiff D.F. felt stupid for interrupting Defendant KILLACKEY.

135.    Defendant KILLACKEY ejaculated inside Plaintiff D.F.

136.    In words or substance, Defendant KILLACKEY told Plaintiff D.F. that she was so beautiful he could not stop himself from ejaculating inside her.

137.    The next day, Defendant KILLACKEY bought Plaintiff D.F. Plan B birth control without being prompted.

138.    The sexually abusive relationship between Defendant KILLACKEY and Plaintiff D.F. continued throughout the campaign over the summer and into the school year.

### iii.    AUGUST-OCTOBER 2012

139.    In August 2012, Plaintiff D.F. turned 17 years old.

140.    Defendant KILLACKEY was still 38 years old.

141.    Upon information and belief, Defendant KILLACKEY had two cell phones: one phone was for campaign business; the second phone was for personal matters.

142.    At some point in time, Defendant KILLACKEY gave Plaintiff D.F. his personal cell phone.

143.    One day, when Plaintiff D.F. was in New York City with her mother, she texted Defendant KILLACKEY, a former resident of New York City, for restaurant recommendations.

144.    When Defendant KILLACKEY received the text message from Plaintiff D.F., he was at the OFA-BRISTOL campaign office.

145.    Upon information and belief, Defendant KILLACKEY was next to SARAH VERBOSKY (now WEBSTER-MELLON), a Field Organizer at OFA-BRISTOL.

146.    Upon information and belief, SARAH VERBOSKY (now WEBSTER-MELLON) observed the personal text, made a disconcerting face towards Defendant KILLACKEY, and questioned why Plaintiff D.F. and Defendant KILLACKEY were texting on KILLACKEY's personal cell phone.

147.    On another occasion at the OFA-BRISTOL campaign office, Plaintiff D.F. mentioned to Defendant KILLACKEY and other campaign staff that she had just seen the movie Pulp Fiction for the first time.

148.    In front of the entire OFA-BRISTOL campaign staff, Defendant KILLACKEY begam singing the song "Girl, You'll Be A Woman Soon"[5] from the movie soundtrack.

149.    Defendant KILLACKEY illegally[6] furnished Plaintiff D.F. alcoholic beverages when they met in private – especially when Defendant KILLACKEY planned to introduce new sex acts to Plaintiff D.F.

150.    Upon information and belief, Defendant KILLACKEY gave Plaintiff D.F. alcohol to lower her inhibitions.

151.    Defendant KILLACKEY began to introduce Plaintiff D.F. to alternative sexual lifestyles, including but not limited to:

    a.    "Cuckhold" fantasies of watching her have sex with another man;

    b.    Rape fantasies;

    c.    Bondage; and,

    d.    Anal sex

---

[5] The lyrics to "Girl, You'll Be A Woman Soon" include: Girl, you'll be a woman soon / I love you so much, can't count all the ways …Don't you know / Girl, you'll be a woman soon / Please, come take my hand / Girl, you'll be a woman soon / Soon, you'll need a man

[6] Title 18 Pa.C.S.A. § 6310.1 states:

Selling or furnishing liquor or malt or brewed beverages to minors.

(a)  Offense defined.--Except as provided in subsection (b), a person commits a misdemeanor of the third degree if he intentionally and knowingly sells or intentionally and knowingly furnishes, or purchases with the intent to sell or furnish, any liquor or malt or brewed beverages to a person who is less than 21 years of age.

152.    In words or substance, Plaintiff D.F. tried to refuse Defendant KILLACKEY's obscene or extreme fantasies.

153.    At one point in time, Defendant KILLACKEY told Plaintiff D.F. that after he first met her, he went home and masturbated while thinking about having sex with her in her "Bristol High School Field Hockey" sweatshirt.

154.    During that time, Defendant KILLACKEY would refer to Plaintiff D.F. as "Daddy's good little girl."

155.    During that time, Defendant KILLACKEY would force Plaintiff D.F. to dress up like a schoolgirl and/or young teenager.

156.    During that time, Defendant KILLACKEY would force Plaintiff D.F. to pretend that he was adopting her.

157.    During that time, Defendant KILLACKEY would force Plaintiff D.F. tell him she was only fourteen (14) years old.

158.    During that time, Defendant KILLACKEY forced Plaintiff D.F. to shave her genitals so that she would appear like a little girl.

159.    During that time, Defendant KILLACKEY would refer to Plaintiff D.F. as a "bad girl" and call her "dirty little bitch" during sexual intercourse.

160.    As a result of Plaintiff D.F.'s sexually abusive relationship with Defendant KILLACKEY, she became withdrawn and removed from her peers.

161.    In September 2012, Plaintiff D.F. attended a wedding with her Stepmom who had been sober for a long time, but unfortunately consumed alcohol at the event.

162.    Plaintiff D.F. was upset and vulnerable, so she called Defendant KILLACKEY for a ride home.

163.    Defendant KILLACKEY took Plaintiff to his apartment.

164.    Again, Defendant KILLACKEY illegally furnished alcoholic beverages to Plaintiff D.F.

165.    While Plaintiff D.F. was at Defendant KILLACKEY's apartment, Defendant KILLACKEY proceeded to have anal sex with Plaintiff D.F. without her permission or consent.

166.    In words or substance, Defendant KILLACKEY told Plaintiff D.F. that "I never got to f*** your 16-year-old ass, I only got to f*** your 17-year-old ass."

167.    Throughout Plaintiff D.F.'s sexually abusive entanglement with Defendant KILLACKEY, Defendant KILLACKEY continued to provide Plaintiff D.F. with a number of gifts, including jewelry and books.

168.    Throughout Plaintiff D.F.'s sexually abusive entanglement with Defendant KILLACKEY, Defendant KILLACKEY continued to coerce Plaintiff D.F. to perform sexual acts under the guise of intimacy, including public sex acts in Core Creek Park, Tyler State Park, Washington's Crossing, and/or Silver Lake – all while she was under eighteen (18) years of age.

### D.    THE SEXUAL EXPLOITATION OF PLAINTIFF D.F. CONTINUED ON OFA-BRISTOL'S WATCH

169.    Upon information and belief, Defendant KILLACKEY knew the age of consent in Pennsylvania was sixteen (16) years of age, but believed other people would not understand how he "felt" about Plaintiff D.F.

170.    In words or substance, Defendant KILLACKEY repeatedly swore Plaintiff D.F. to secrecy about their relationship until she turned eighteen (18) years old.

171.    As a result of Defendant KILLACKEY's desire to maintain secrecy, Plaintiff D.F. did not directly reveal the nature of her relationship with Defendant KILLACKEY to OFA DEFENDANTS or her school.

22

172.    During the Summer and Fall of 2012, Plaintiff D.F. continued to volunteer as a "Organizing Fellow" for OFA-BRISTOL and OFA DEFENDANTS.

173.    Upon information and belief, Plaintiff D.F.'s campaign responsibilities did not change substantially as a result of her sexually abusive and illicit relationship with Defendant KILLACKEY, but Plaintiff D.F. was afforded additional privileges that other volunteers were not.

174.    Upon information and belief, in the weeks and months that followed, Defendant KILLACKEY brought Plaintiff D.F. into OFA-BRISTOL's "inner circle."

175.    Upon information and belief, OFA-BRISTOL's "inner circle" included:

    a.    BRENDAN MCPHILLIPS, Field Director

    b.    DAN SIEGEL, Field Director (Montgomery County)

    c.    MEGHAN BLICKMAN, Field Organizer

    d.    MAX WEISS, Field Organizer

    e.    SARAH VERBOSKY (now WEBSTER-MELLON), Field Organizer

    f.    LINDSEY WARREN-SHRINER, Field Organizer

176.    Upon information and belief, the aforementioned individuals, along with other campaign staff of OFA-BRISTOL and/or OFA DEFENDANTS, witnessed Defendant KILLACKEY's palpable interest in and behavior towards Plaintiff D.F.

177.    On several occasions, Plaintiff would complete her phone-banking duties at OFA-BRISTOL. While other student volunteers would leave, Plaintiff D.F. was encouraged to stay at the office.

178.    The supervising staff of OFA-BRISTOL, including Defendant KILLACKEY would begin to report back to leadership within OFA DEFENDANTS.

179.    On more than one occasion, Defendant KILLACKEY invite Plaintiff D.F. to sit with him while he made his reports in a small office with the door closed.

180.    Upon information and belief, the aforementioned individuals, along with other campaign staff of OFA-BRISTOL and/or OFA DEFENDANTS, witnessed the Defendant KILLACKEY and Plaintiff D.F. go to the back office alone and close the door.

181.    Upon information and belief, the aforementioned individuals, along with other campaign staff of OFA-BRISTOL and/or OFA DEFENDANTS, knew or should have known Defendant KILLACKEY was engaging Plaintiff D.F., a minor, in an inappropriate, intimate, sexual, abusive, manipulative, and/or exploitative relationship.

182.    Upon information and belief, at all times relevant hereto, OFA DEFENDANTS acted in concert with Defendant KILLACKEY to conceal his sexually exploitive conduct from individuals outside the OFA-BRISTOL campaign.

### i.    <u>ELECTION NIGHT 2012</u>

183.    November 6, 2012, was Election Day/Night.

184.    Upon information and belief, members of the OFA-BRISTOL campaign staff, including Defendant KILLACKEY, wanted to watch the presidential election results at a bar.

185.    In words or substance, the OFA-BRISTOL campaign staff, including Defendant KILLACKEY, discussed the fact that Plaintiff D.F. was only seventeen and, thus, under the legal age to drink.

186.    In words or substance, the OFA-BRISTOL campaign staff, including Defendant KILLACKEY, agreed to go to Chambers 19 Bistro & Bar, located at 19 N Main St, Doylestown, PA 18901.

187.    Upon information and belief, the OFA-BRISTOL campaign staff, including Defendant KILLACKEY, specifically chose Chambers 19 Bistro & Bar under the belief that the bartenders/servers there would not ask Plaintiff D.F. for identification, thus she could be served and/or consume alcohol.

188.    D.F. was the only minor campaign volunteer joining the other OFA-BRISTOL campaign staff members at Chambers 19 Bistro & Bar.

189.    At Chambers 19 Bistro & Bar, Defendant KILLACKEY sat right beside Plaintiff D.F. along with other OFA-BRISTOL campaign staff members.

190.    Throughout the evening, OFA-BRISTOL campaign staff members, including Defendant KILLACKEY, provided alcoholic beverages to Plaintiff D.F. and she consumed them.

191.    At all times relevant hereto, OFA-BRISTOL campaign staff members furnished alcohol to Plaintiff D.F., a seventeen-year-old, in violation of criminal statute 18 Pa.C.S.A. § 6310.1.

192.    During the evening, OFA-BRISTOL campaign staff members began taking photographs of one another to memorialize the occasion.

193.    In the photograph[7] below, Plaintiff D.F. (right) is seen sitting directly next to Defendant KILLACKEY, along with other OFA-BRISTOL campaign staff, sitting at a table with several alcoholic beverages.

---

[7] This picture has been modified to blur the image of Plaintiff D.F.'s face. in order to protect her privacy.



194.    The photograph above was taken by MEGHAN BLICKMAN, Field Organizer for OFA OFA-BRISTOL.

### ii.    INAUGURATION 2013

195.    On or about January 21, 2013, President Obama was inaugurated for his second presidential term.

196.    Prior to the inauguration, LINDSEY WARREN-SHRINER, Field Organizer for OFA-BRISTOL, invited Plaintiff D.F. to Washington, D.C., to stay at her home and attend inauguration events.

197.    When Plaintiff D.F. arrived, Defendant KILLACKEY offered to meet Plaintiff D.F. and take her to dinner.

198.    LINDSEY WARREN-SHRINER joined Defendant KILLACKEY and Plaintiff D.F. for dinner as well.

199.    In the photograph[8] below, Plaintiff D.F. (right) is seen sitting directly next to Defendant KILLACKEY.



200.    The photograph above was taken by LINDSEY WARREN-SHRINER, Field Organizer for OFA-BRISTOL.

201.    On January 21, 2013, members of the OFA-BRISTOL campaign staff attended an Inaugural Ball.

202.    OFA DEFENDANTS provided free alcoholic beverages to all attendees, including Plaintiff D.F., who was just seven years old at the time.

203.    At all times relevant hereto, Defendant OFA DEFENDANTS furnished alcohol to Plaintiff D.F., a seventeen-year-old, in violation of criminal statute 18 Pa.C.S.A. § 6310.1.

---

[8] This picture has been modified to blur the image of Plaintiff D.F.'s face in order to protect her privacy.

204.    In the photographs[9] below, Plaintiff D.F. can be seen with fellow OFA-BRISTOL campaign staff:



205.    The photographs above were taken by LINDSEY WARREN-SHRINER, Field Organizer for OFA-BRISTOL.

206.    In the photograph[10] below, Plaintiff D.F. (left) is seen with BRENDAN MCPHILLIPS, Field Director of OFA-BRISTOL.



---

[9] This picture has been modified to blur the image of Plaintiff D.F. in order to protect her privacy.
[10] This picture has been modified to blur the image of Plaintiff D.F. in order to protect her privacy.

28

207.    The preceding photograph was taken by LINDSEY WARREN-SHRINER, Field Organizer for OFA-BRISTOL.

208.    BRENDAN MCPHILLIPS would later admit to Plaintiff D.F., in words or substance, that he was attracted to Plaintiff D.F., but wanted to wait until she turned eighteen (18) to pursue a relationship with her.

209.    Upon learning of the sexually abusive relationship between Defendant KILLACKEY and Plaintiff D.F., BRENDAN MCPHILLIPS, stated to Plaintiff D.F., in words or substance, "I'm glad that didn't come out during the campaign. That would've been destructive."

210.    At the Inaugural Ball, Defendant KILLACKEY and Plaintiff D.F. openly held each other— arms wrapped around one another—for extended periods of time, including during most of the Lady Gaga concert.

211.    That night, Defendant KILLACKEY and Plaintiff D.F. were intoxicated for much of the time, openly behaving like boyfriend and girlfriend.

212.    Upon information and belief, Defendant KILLACKEY and Plaintiff D.F.'s intimate interactions were in plain view to members of the OFA-BRISTOL campaign staff as well as individuals associated with OFA DEFENDANTS/

213.    Upon information and belief, all of the pictures contained in this Complaint were taken by members of the OFA-BRISTOL campaign staff.

214.    Upon information and belief, all of the pictures contained in this Complaint were posted on social media by members of the OFA-BRISTOL campaign staff.

215.    The events described herein establish that OFA-BRISTOL and the OFA DEFENDANTS fostered a culture of depravity, permissiveness, and exploitation by tolerating sexual misconduct between male leadership within the campaign and a sixteen- or seventeen-year-

old girl, including but not limited to grooming, flirtation, private outings, special privileges, touching, hugging, and/or other innuendo, overtures and solicitations.

216.    Upon information and belief, ORGANIZING FOR AMERICA, which had been operating as an arm of the DEMOCRATIC NATIONAL COMMITTEE, would soon spin off from the DEMOCRATIC NATIONAL COMMITTEE, rebrand itself as "Organizing For Action," and become a standalone 501(c)(4) nonprofit.

217.    Following President Obama's victory, Defendant KILLACKEY and Plaintiff D.F. ceased contact for a period of time

218.    Defendant KILLACKEY moved to 334 Durham Road, Langhorne, Pennsylvania 19047.

219.    Upon information and belief, Defendant KILLACKEY moved to Durham Road to be closer to Plaintiff D.F.

220.    Defendant KILLACKEY's sexual abuse of Plaintiff D.F. continued into 2013, ceasing around May 2013, when Plaintiff D.F. was still seventeen (17) years of age.

### E.    OFA DEFENDANTS KNEW OR HAD REASON TO KNOW THAT DEFENDANT KILLACKEY USED HIS POSITION AT OFA-BRISTOL TO PURSUE A SEXUALLY ABUSIVE RELATIONSHIP WITH PLAINTIFF D.F., A MINOR

221.    At all times relevant hereto, members of the political campaign for ORGANIZING FOR AMERICA and the DEMOCRATIC NATIONAL COMMITTEE knew or should have known that BRENDAN KILLACKEY used his position and influence to groom D.F.—a 16-year-old high school student volunteer—for a sexually abusive and illicit relationship.

222.    At all times relevant hereto, members of the political campaign for ORGANIZING FOR AMERICA and the DEMOCRATIC NATIONAL COMMITTEE knew or should have known that BRENDAN KILLACKEY targeted Plaintiff D.F., isolated her, corrupted her morals, furnished

her with alcohol, desensitized her to sexual acts, committed sexual acts against her will, and concealed this sexually abusive and illicit relationship.

223. The following events described herein occurred at the OFA-BRISTOL office, in front of OFA-BRISTOL campaign staff, with the permission or approval of OFA-BRISTOL campaign staff, were facilitated by OFA-BRISTOL campaign staff, and/or at events sponsored by OFA-BRISTOL campaign staff or OFA DEFENDANTS:

    a.    June 2012 – In front of OFA-BRISTOL campaign staff, Defendant KILLACKEY offers Plaintiff D.F. a ride home and begins his pursuit of her in his car while it was parked in the OFA-BRISTOL parking lot.

    b.    July 3, 2012 – In front of OFA-BRISTOL campaign staff, Defendant KILLACKEY asks permission to have Plaintiff D.F. canvas Bristol Township for more than 4 hours, alone, in his car.

    c.    In front of OFA-BRISTOL staff, compliments and gifts were given at the OFA-BRISTOL office.

    d.    Plaintiff D.F.'s text message to Defendant KILLACKEY's personal phone is observed by OFA-BRISTOL campaign staff.

    e.    Defendant KILLACKEY sings "Girl, You'll Be A Woman Soon" to Plaintiff D.F., which is observed by OFA-BRISTOL campaign staff.

    f.    In front of OFA-BRISTOL campaign staff, Defendant KILLACKEY invites Plaintiff D.F. to the small back office of OFA-BRISTOL, and closes the door.

    g.    November 6, 2012 – On Election Night, Defendant KILLACKEY and OFA-BRISTOL campaign staff invite Plaintiff D.F. to Chambers 19 Bistro & Bar to watch election results, knowing that Plaintiff D.F. would not be carded, and furnished alcohol to the then seventeen-year-old.

    h.    January 21, 2012 – During Inauguration Weekend, with knowledge of OFA-BRISTOL campaign staff, Defendant KILLACKEY takes Plaintiff D.F. out to dinner. At the Inaugural Ball, in front of OFA-BRISTOL campaign staff and OFA DEFENDANTS staff, Defendant KILLACKEY wraps his arms around Plaintiff D.F. for extended periods of time, as the then seventeen-year-old consumes DNC-furnished alcohol to excess.

224.    The following individuals at OFA-BRISTOL knew or had reason to know of Defendant KILLACKEY's sexually abusive relationship with Plaintiff D.F.

      a.    BRENDAN MCPHILLIPS, Field Director

      b.    DAN SIEGEL, Field Director (Montgomery County)

      c.    MEGHAN BLICKMAN, Field Organizer

      d.    MAX WEISS, Field Organizer

      e.    SARAH VERBOSKY (now WEBSTER-MELLON), Field Organizer

      f.    LINDSEY WARREN-SHRINER, Field Organizer

225.    The individuals named in the preceding paragraph observed, approved, photographed, participated and/or otherwise condoned by acts of commission or omission the misconduct described herein.

226.    At no time—was Defendant KILLACKEY's open flirtation and pursuit of Plaintiff D.F., who was sixteen or seventeen years old, lawful, appropriate, professional, innocent, or harmless.

227.    At all times—OFA DEFENDANTS had an obligation to institute policies, procedures, and/or training as to sexual harassment, sexual misconduct, reporting laws, reporting processes, and/or employee conduct, especially pertaining to minors and minor volunteers.

228.    At all times—OFA DEFENDANTS failed to institute policies, procedures, and/or training as to sexual harassment, sexual misconduct, reporting laws, reporting processes, and/or employee conduct, especially pertaining to minors and minor volunteers.

229.    At all times—OFA DEFENDANTS failed to adhere to policies, procedures, and/or training as to sexual harassment, sexual misconduct, reporting laws, reporting processes, and/or employee conduct, especially pertaining to minors and minor volunteers.

230.    Upon information and belief, each one of the events described herein should have triggered an investigation by OFA-BRISTOL campaign staff and/or OFA DEFENDANTS into the nature of the relationship between Defendant KILLACKEY, age 38, and Plaintiff D.F., a high school volunteer aged sixteen  or seventeen.

**F.    PLAINTIFF D.F. CONFRONTS DEFENDANT KILLACKEY ABOUT THEIR SEXUALLY ABUSIVE RELATIONSHIP**

231.    During the Fall of 2013, Plaintiff D.F., now eighteen (18) years of age, attended Temple University.

232.    Within Plaintiff D.F.'s first week of college, Defendant KILLACKEY visited Plaintiff D.F.

233.    Defendant KILLACKEY and Plaintiff D.F. began to be intimate when, all of a sudden, Defendant KILLACKEY became visibly and audibly upset about other relationships Plaintiff D.F. had during their hiatus.

234.    In 2015, at the age of twenty (20), Plaintiff D.F. entered a rehabilitation facility for drug and alcohol abuse that she attributed to the forced sexual abuse committed upon her by Defendant KILLACKEY.  Upon Plaintiff D.F.'s discharge, she saw Defendant KILLACKEY at least once, but Defendant KILLACKEY ended the relationship saying, in words or substance, "this isn't good for us." After much needed therapy, Plaintiff D.F. sent Defendant an email to confront him regarding his sexual abuse of her.

235.    On August 21, 2019, Plaintiff D.F. wrote:

> I don't know if it matters to you, but I need you to know that our relationship caused serious psychological and sexual harm to me. I am aware it caused you pain as well. When I look at my sixteen year old self, or even my drug-addicted nineteen year old self, I see a confused child. And I wish you would have too.

I know you sincerely cared for me. I know you and I had some kind of connection. I know that I was clever and insightful when you met me, but those qualities dont make someone an adult. When we met, I had no experience in overcoming shame, or reflecting on my values, or practicing accountability, responsibility, integrity- the things that really make someone who they are.

I look at sixteen year old D********, and I see a quietly suffering girl. Smart, charming, but absolutely desperate for the love and care that her parents couldn't give her. I thought I found it in you. The eroticism and chaos of our relationship made it impossible for me to understand my value to you. It distorted my view of my own sexuality and my own autonomy. I deeply regret that I didn't tell anyone while it was happening who could have helped me.

You don't have to respond.

236.    On August 25, 2019, Defendant KILLACKEY responded.

Dear ████████,

I'm writing after much thought as to what you wrote and whether I could do any good in responding. In the end, I want to show respect for your reaching out and acknowledge what you said.

In the two and a half years since we last spoke, you and our relationship have been in my thoughts daily. That is to say, you matter to me. I very consciously have not been in touch, not to avoid or forget, but to allow at least me time and space for honest perspective, healing wounds, forgiveness and perhaps even some peace in this life again. I want that for myself and the people that matter to me, and I am willing to do what I can to help get there.

Brendan
[Quoted text hidden]

237.    On August 27, 2019, Plaintiff D.F. responded to Defendant KILLACKEY:

I don't know that I would call your response "acknowledging what I said."

Your email is vague. It is well-meaning but it does not address my point at all.

If you feel you have more to say, or have come to any conclusions in the past three years, I am open to receiving them. If not, that's fine too. I said what I needed to say.

238.    Within two weeks after confronting her abuser, Plaintiff D.F. relapsed and eventually entered rehab again for alcohol abuse.

239.    As a direct result of the negligent and wrongful conduct of all Defendants as set forth herein, Plaintiff was caused to sustain severe, painful, and permanent personal injuries, including:

a.    Sexual assault and battery;

b.    Aggravated indecent assault;

c.    Harassment;

d.    Unwarranted touching;

e.    Invasion of physical and personal privacy;

f.    Post Traumatic Stress Disorder;

g.    Addiction/Substance Abuse;

h.    Relapse(s);

i.    Eating disorder(s);

j.    Panic attacks;

k.    Psychological manipulation;

l.    Past mental anguish;

m.    Future mental anguish;

n.    Past medical expenses;

o.    Future medical expenses;

p.    Past and future loss of earnings;

q.    Past and future loss of earning capacity and other economic losses;

r.    Past and future loss of life's pleasures;

s.    Humiliation and embarrassment;

t.    Short-term and long-term disability;

u.    Incidental and other expenses; and

        v.     Such other ills and injuries are more aptly described in the medical records, which will be set forth and more fully described as this lawsuit continues.

240.    As a direct and proximate result of the Defendant's negligence, Plaintiff suffered significant intangible losses, including, among other things, grief, anxiety, fear, dread, pain, suffering, bodily deformation, loss of life's pleasures, loss of well-being, and inability to engage in everyday activities, duties, and recreations.

## IV.    CAUSES OF ACTION

### COUNT I
### NEGLIGENCE
### Plaintiff D.F. v. Defendants ORGANIZING FOR AMERICA, DNC SERVICES CORPORATION A/K/A DEMOCRATIC NATIONAL COMMITTEE D/B/A ORGANIZING FOR AMERICA, JOHN DOES 1-5 and ABC CORPORATIONS 1-5

241.    Plaintiff incorporates by reference the preceding paragraphs of this Complaint as if fully set forth herein.

242.    At all times mentioned herein, OFA DEFENDANTS owed a duty of care to keep staff and volunteers, including those under the age of eighteen (18), safe from sexual assault of a kind that ultimately befell Plaintiff, by campaign staff under the supervision and control of and provided by OFA DEFENDANTS.

243.    At all times mentioned herein, OFA DEFENDANTS breached the above-stated duty in a negligent, reckless, willful, and wanton manner, and caused Plaintiff to be sexually assaulted, manipulated, and exploited, among other damages and harms set forth herein.

244.    At all times relevant, OFA DEFENDANTS by and through its authorized employees, agents, apparent agents, and/or servants, including Defendant KILLACKEY, had a duty to exercise reasonable care in their operation of OFA DEFENDANTS and OFA-BRISTOL.

245. At all times relevant, OFA DEFENDANTS had a duty to exercise reasonable care in ensuring that its authorized employees, agents, apparent agents, and/or servants, including Defendant KILLACKEY, complied with the policies and/or procedures of OFA DEFENDANTS.

246. At all times relevant, OFA DEFENDANTS had a duty to exercise reasonable care in drafting and/or implementation of policies and/or procedures to be followed by its employees, agents, apparent agents, and/or servants, for the prevention and/or investigation of sexual assault non-consensual relationships, intimate relations with minors, and/or sexual exploitation.

247. At all times relevant, OFA DEFENDANTS had a duty to exercise reasonable care in the hiring, retention, and/or supervision of campaign staffers, including Defendant KILLACKEY.

248. At all times relevant hereto, OFA DEFENDANTS breached its duty of reasonable care owed to Plaintiff, D.F., by one or more of the following acts and/or omissions:

    a.    Failing to provide a safe environment for minor student volunteers, like Plaintiff;

    b.    Soliciting and/or recruiting minor volunteers from local high schools and placing them in a campaign environment with adults without having any institutional safeguards to protect minor volunteers from sexual assault;

    c.    Soliciting and/or recruiting minor volunteers from local high schools and placing them in an campaign environment with adults without having any institutional safeguards to protect minor volunteers from sexual abuse;

    d.    Soliciting and/or recruiting minor volunteers from local high schools and placing them in a campaign environment with adults without having any institutional safeguards to protect minor volunteers from predatory behavior;

    e.    Soliciting and/or recruiting minor volunteers from local high schools and placing them in a campaign environment with adults without having any institutional safeguards to protect minor volunteers from sexual grooming;

f.      Soliciting and/or recruiting minor volunteers from local high schools and placing them in a campaign environment with adults without having any institutional safeguards to protect minor volunteers from being targeted, isolated, manipulated by access and false trust, desensitization to sexual content and touch, and/or otherwise groomed for sexual exploitation.

g.      Failing to discover Defendant KILLAKEY's sexual relationship with Plaintiff, a minor;

h.      Failing to investigate Defendant KILLAKEY's personal relationship with Plaintiff, a minor;

i.      Increasing the risk of harm to minors, including Plaintiff;

j.      Negligently and/or willfully maintaining and concealing an environment of sexual abuse of minors;

k.      Failing to create and/or implement a system to ensure the maintenance of professional boundaries between its minor student volunteers and campaign staff, to prevent inappropriate touching and/or sexual assault of Plaintiff;

l.      Failing to properly and adequately vet and/or screen Defendant KILLACKEY prior to him interfacing with Defendants' volunteers, including Plaintiff;

m.      Failing to confirm that Defendant KILLACKEY had the minimum ethics education, training, and necessary skills prior to him interfacing with Defendants' volunteers, including Plaintiff;

n.      Hiring and/or retaining Defendant KILLACKEY without adequately interviewing him;

o.      Hiring and/or retaining Defendant KILLACKEY without checking his professional references;

p.      Hiring and/or retaining Defendant KILLACKEY without assessing his competence as campaign staff;

q.      Hiring and/or retaining Defendant KILLACKEY without assessing his ability to communicate with minor student volunteers;

r.      Hiring and/or retaining Defendant KILLACKEY without assessing his ability to refrain from expressing romantic or sexual interest with minor student volunteers;

s.      Hiring and/or retaining Defendant KILLACKEY, when Defendants

knew or should have known that Defendant KILLACKEY was
incompetent and/or unqualified;

t.      Hiring and/or retaining Defendant KILLACKEY, when Defendants
knew or should have known that Defendant KILLACKEY was
capable of predatory behavior against minor student volunteers;

u.      Failing to adequately and in an ongoing fashion monitor Defendant
KILLACKEY;

v.      Failing to follow its policies and/or procedures for the investigation
of prior complaints submitted to Defendants about Defendant
KILLACKEY;

w.      Failing to appreciate and recognize that prior complaints clearly
show Defendant KILLACKEY's incompetence, lack of
professionalism, and/or sexually inappropriate conduct;

x.      Failing to place Defendant KILLACKEY on proper monitoring
upon receipt of prior complaints;

y.      Failing to prevent Defendant KILLACKEY' inappropriate and/or
sexual abuse of Plaintiff;

z.      Failing to recognize KILLACKEY' propensity for abuse and sexual
abuse of employees and the risk this abuse and sexual abuse created
for Plaintiff;

aa.     Failing to monitor and supervise the activities of KILLACKEY;

bb.     Failing to promulgate policies and procedures to require supervision
and monitoring of KILLACKEY and his interactions and activities
with minor volunteers, including Plaintiff;

cc.     Failing to properly investigate KILLACKEY such that information
would have put Defendants on notice that KILLACKEY had the
propensity to abuse and sexually abuse volunteers, including
Plaintiff;

dd.     Possessing information but ignoring said information that put the
Defendants on notice that KILLACKEY had the propensity to abuse
and sexually abuse volunteers, including Plaintiff

ee.     Failing to properly screen KILLACKEY for abusive and/or sexually
abusive or predatory behaviors against minor student volunteers,
including Plaintiff;

ff.     Failing to use reasonable care under the circumstances;

gg.  Failing to manage Defendant OFA in a manner to maintain the highest practical, physical, mental and psychosocial well-being of each campaign volunteer and staff member, including Plaintiff;

hh.  Child Abuse as defined by the Child Protective Services Law (CPSL), codified at 23 Pa.C.S.A. § 6301 et seq. and 23 Pa.C.S.A. § 6311 et seq.;

ii.  Failing to prevent Child Abuse as defined by Child Protective Services Law (CPSL), codified at 23 Pa.C.S.A. § 6301 et seq. and 23 Pa.C.S.A. § 6311 et seq.;

jj.  Failing to report child abuse under Child Protective Services Law (CPSL), codified at 23 Pa.C.S.A. § 6303 et seq.;

kk.  Failing to report child abuse and/or sexual abuse under applicable state, federal, and/or political campaign laws and regulations;

ll.  Failing to prevent the corruption of minors, codified at 18 Pa.C.S.A. § 6301;

mm.  Other negligent and reckless acts that may be learned from information currently and solely in the possession of Defendants.

249.  As a direct and proximate result of the aforesaid negligence, recklessness and gross negligence of OFA DEFENDANTS, Plaintiff D.F. was caused to be sexually assaulted by Defendant KILLACKEY.

250.  As a result of the negligence, recklessness and gross negligence of Defendant OFA, Plaintiff suffered serious personal injuries, emotional distress, mental pain and suffering, and other losses, all of which have not yet been ascertained.

251.  OFA DEFENDANTS engaged in conduct that demonstrated a willful and wanton disregard for the safety and well-being of its volunteers, including Plaintiff

252.  Plaintiff D.F. suffered significant emotional and physical harm as a direct and proximate result of the negligence, recklessness, and outrageous conduct of OFA DEFENDANTS and its employees, agents, and administrators.  The negligence, recklessness, and outrageous conduct was a substantial factor in causing, and did proximately cause Plaintiff to suffer severe

40

and permanent injuries along with past and future damages, including, but not limited to mental anguish, embarrassment, loss of self-worth, fear, flashbacks, nightmares, loss of intimacy, pain, inability to experience sexual intimacy, humiliation, loss of life's pleasures, and other physical and mental injuries presently and which may be diagnosed in the future.

253.    Plaintiff D.F.'s injuries were caused solely by the negligence, recklessness, and outrageous conduct of OFA and were not caused by the Plaintiff in any part.

**WHEREFORE**, Plaintiff D.F. demands judgment in her favor, including compensatory damages and punitive damages against Defendants, including costs, damages for pre-judgment delay and any other relief the Court shall order, in excess of any applicable arbitration limits.

## COUNT II
## CIVIL CONSPIRACY / AIDING AND ABETING
**Plaintiff D.F. v. Defendants ORGANIZING FOR AMERICA, DNC SERVICES CORPORATION A/K/A DEMOCRATIC NATIONAL COMMITTEE D/B/A ORGANIZING FOR AMERICA, JOHN DOES 1-5 and ABC CORPORATIONS 1-5**

254.    Plaintiff incorporates by reference the preceding paragraphs of this Complaint as if fully set forth herein.

255.    Pennsylvania's Child Protective Services Law provides:

(a) Mandated reporters.--The following adults shall make a report of suspected child abuse, subject to subsection (b), if the person has reasonable cause to suspect that a child is a victim of child abuse:

(7) An individual paid or unpaid, who, on the basis of the individual's role as an integral part of a regularly scheduled program, activity or service, is a person responsible for the child's welfare or has direct contact with children.

See 23 Pa.C.S.A. § 6311.

256.    Thus, under Section 6311(a)(7), an "individual paid or unpaid" who, through a "regularly scheduled program, activity, or service," accepts responsibility for a child is designated a mandated reporter of suspected child abuse. Id.

41

257.    Pennsylvania's statutory definition of "child abuse" provides, in pertinent part:

(b.1) Child abuse.--The term "child abuse" shall mean intentionally, knowingly or recklessly doing any of the following:

(1) Causing bodily injury to a child through any recent act or failure to act.

(3) Causing or substantially contributing to serious mental injury to a child through any act or failure to act or a series of such acts or failures to act.

(4) Causing sexual abuse or exploitation of a child through any act or failure to act.

(5) Creating a reasonable likelihood of bodily injury to a child through any recent act or failure to act.

(6) Creating a likelihood of sexual abuse or exploitation of a child through any recent act or failure to act.

See 23 Pa.C.S.A. § 6303(b.1).

258.    Defendants OFA DEFENDANTS were subject to the provisions of 23 Pa.C.S.A. § 6311 et. seq. and 23 Pa.C.S.A. § 6303(b.1) et. seq.

259.    Upon information and belief, at all times relevant hereto, OFA DEFENDANTS witnessed Defendant KILLACKEY's palpable interest in Plaintiff D.F.

260.    Upon information and belief, at all times relevant hereto, OFA DEFENDANTS knew or should have known Defendant KILLACKEY was engaging Plaintiff D.F., a minor, in an inappropriate, intimate, sexual, abusive, manipulative, and/or exploitative relationship.

261.    Upon information and belief, at all times relevant hereto, OFA DEFENDANTS acted in concert with Defendant KILLACKEY to conceal his tortious sexually exploitive conduct with Plaintiff D.F., as described herein.

262.    Upon information and belief, at all times relevant hereto, OFA DEFENDANTS acted in concert with Defendant KILLACKEY to prevent or discourage campaign staff from

42

reporting child abuse pursuant to Pennsylvania's Child Protective Services Law (CPSL), codified at 23 Pa.C.S.A. § 6301 et seq., including § 6303 et seq., § 6311 et seq., and/or under applicable state, federal, and/or political campaign laws and regulations.

263.    Under Pennsylvania law, a civil conspiracy exists where a combination of two or more persons agree (expressly or impliedly) to act together in furtherance of a common purpose to commit unlawful act(s) or a lawful act by unlawful means. See Marion v. Bryn Mawr Tr. Co., 288 A.3d 76, 88 (Pa. 2023) ("In order to state a cause of action for civil conspiracy, a plaintiff must show 'that two or more persons combined or agreed with intent to do an unlawful act or to do an otherwise lawful act by unlawful means,'" quoting Thompson Coal Co. v. Pike Coal Co., 488 Pa. 198, 412 A.2d 466, 472 (1979)).

264.    Under Pennsylvania law, a defendant is subject to liability for aiding and abetting a tort upon proof of the following elements:

> (a) a tort was committed against the plaintiff by another party;
>
> (b) the defendant knew that the other party's conduct was wrongful;
>
> (c) the defendant knowingly and substantially assisted in the commission or concealment of the tort; and
>
> (d) the plaintiff suffered economic loss as a result.

265.    Marion v. Bryn Mawr Tr. Co., 288 A.3d 76, 82 (Pa. 2023) (citing Restatement (Third) of Torts: Liab. for Econ. Harm § 28 (AM. L. INST. 2020).

266.    At all times relevant hereto, the aforesaid negligence, recklessness and gross negligence of OFA DEFENDANTS constituted a civil conspiracy with Defendant KILLACKEY.

267.    At all times relevant hereto, OFA DEFENDANTS aided and abetted Defendant KILLACKEY's inappropriate, intimate, sexual, abusive, manipulative, and/or exploitative

relationship with Plaintiff D.F. based on OFA DEFENDANTS' aforesaid negligence, recklessness and gross negligence.

268.    As a result of the negligence, recklessness and gross negligence of Defendant OFA, Plaintiff suffered serious personal injuries, emotional distress, mental pain and suffering, and other losses, all of which have not yet been ascertained.

269.    OFA DEFENDANTS engaged in conduct that demonstrated a willful and wanton disregard for the safety and well-being of its volunteers, including Plaintiff.

270.    Plaintiff D.F. suffered significant emotional and physical harm as a direct and proximate result of the negligence, recklessness, and outrageous conduct of OFA DEFENDANTS and its employees, agents, and administrators.  The negligence, recklessness, and outrageous conduct was a substantial factor in causing, and did proximately cause, Plaintiff to suffer severe and permanent injuries along with past and future damages, including, but not limited to mental anguish, embarrassment, loss of self-worth, fear, flashbacks, nightmares, loss of intimacy, pain, inability to experience sexual intimacy, humiliation, loss of life's pleasures, and other physical and mental injuries presently and which may be diagnosed in the future.

271.    Plaintiff D.F.'s injuries were caused solely by the negligence, recklessness, and outrageous conduct of OFA DEFENDANTS and were not caused by the Plaintiff in any part.

**WHEREFORE**, Plaintiff D.F. demands judgment in her favor, including compensatory damages and punitive damages against Defendants, including costs, damages for pre-judgment delay and any other relief the Court shall order, in excess of any applicable arbitration limits.

<u>**COUNT III**</u>
<u>**VICARIOUS LIABILITY**</u>
**Plaintiff D.F. V. Defendants ORGANIZING FOR AMERICA, DNC SERVICES
CORPORATION A/K/A DEMOCRATIC NATIONAL COMMITTEE D/B/A
ORGANIZING FOR AMERICA, JOHN DOES 1-5 and ABC CORPORATIONS 1-5**

272.    Plaintiff incorporates by reference the preceding paragraphs of this Complaint as if fully set forth herein.

273.    Defendants OFA DEFENDANTS engaged in unpermitted, harmful, and unlawful conduct which facilitated the sexual assault of Plaintiff D.F.  Said conduct was undertaken while the OFA DEFENDANTS were employees and/or agents of OFA DEFENDANTS, while in the course and scope of employment with OFA DEFENDANTS, and/or was ratified by the Defendants OFA DEFENDANTS.

274.    Prior to or during the time that Defendant KILLACKEY engaged in the conduct alleged above, OFA DEFENDANTS knew, had reason to know, or were otherwise on notice of the unpermitted, harmful, unlawful, and negligent conduct of the Defendant KILLACKEY.  OFA DEFENDANTS failed to take reasonable steps and failed to implement reasonable safeguards to avoid acts of sexual assault, corruption of minors, sexual exploitation, and other wrongful acts described herein by the Defendant KILLACKEY. Furthermore, at no time during the period of time alleged did OFA DEFENDANTS have in place a system or procedure to supervise and/or monitor the student-residents in their care at their football camp to ensure that criminal misconduct did not occur.

275.    Defendants OFA DEFENDANTS' knowing acquiescence and silence with respect to the known, or reasonably knowable, negligence acts and omissions of the Defendant KILLACKEY constituted a course of conduct through which acts of sexual assault occurred or were likely to occur.

276.    Through their failure to timely require plans as heretofore set forth, and for all of the other reasons set forth in this Complaint including, without limitation, their failure to take the

steps necessary to prevent the occurrence of such reprehensible acts, OFA DEFENDANTS ratified said actions and omissions and, accordingly, are vicariously liable for the actions of its agents, employees, volunteers, staff members, administrators, and representatives, including Defendant KILLCKEY.

277.    As a result of the above-described conduct, Plaintiff D.F. has suffered and will continue to suffer great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation and loss of enjoyment of life; was prevented and will continue to be prevented from performing his daily activities and obtaining the full enjoyment of life; has sustained and will continue to sustain loss of earnings and earning capacity; and/or has incurred and will continue to incur expenses for medical and psychological treatment, therapy and counseling.

**WHEREFORE**, Plaintiff D.F. demands judgment in her favor, including compensatory damages and punitive damages against Defendants, including costs, damages for pre-judgment delay and any other relief the Court shall order, in excess of any applicable arbitration limits.

<u>**COUNT IV**</u>
<u>**NEGLIGENCE**</u>
**Plaintiff D.F. v. Defendant BRENDAN J. KILLACKEY**

278.    Plaintiff incorporates by reference the preceding paragraphs of this Complaint as if fully set forth herein.

279.    Pursuant to Pa. 18 § 3124.1 (Sexual Assault), [a] person commits a felony of the second degree when that person engages in sexual intercourse or deviate sexual intercourse with a complainant without the complainant's consent.

280.    Pursuant to Pa. 18 § 3126 §A1 (Indecent Assault), a person is guilty of indecent assault if the person has indecent contact with the complainant, causes the complainant to have

indecent contact with the person or intentionally causes the complainant to come into contact with seminal fluid, urine or feces for the purpose of arousing sexual desire in the person or the complainant and: (1) the person does so without the complainant's consent.

281. Under Pennsylvania law, Corruption of Minors is defined as: Pa. 18 § 6301. Corruption of minors.

> (a) Offense defined.--
>
> (1) (i)  Except as provided in subparagraph (ii), whoever, being of the age of 18 years and upwards, by any act corrupts or tends to corrupt the morals of any minor less than 18 years of age, or who aids, abets, entices or encourages any such minor in the commission of any crime, or who knowingly assists or encourages such minor in violating his or her parole or any order of court, commits a misdemeanor of the first degree.
>
> (ii)  Whoever, being of the age of 18 years and upwards, by any course of conduct in violation of Chapter 31 (relating to sexual offenses) corrupts or tends to corrupt the morals of any minor less than 18 years of age, or who aids, abets, entices or encourages any such minor in the commission of an offense under Chapter 31 commits a felony of the third degree.

See 18 Pa.C.S.A. § 6301(a)(1)(i-ii).

282. Under Pennsylvania law, furnishing alcohol to a minor is a crime. Pursuant to 18 Pa.C.S.A. § 6310.1 states:

> Selling or furnishing liquor or malt or brewed beverages to minors.
>
> (a) Offense defined.--Except as provided in subsection (b), a person commits a misdemeanor of the third degree if he intentionally and knowingly sells or intentionally and knowingly furnishes, or purchases with the intent to sell or furnish, any liquor or malt or brewed beverages to a person who is less than 21 years of age.

See 18 Pa.C.S.A. § 6310.1.

283. Defendant KILLACKEY committed the aforementioned crimes against Plaintiff D.F., a minor.

284. At all times relevant hereto, Plaintiff D.F., a minor, did not consent and/or was unable to consent to having sexual intercourse or indecent contact with Defendant KILLACKEY.

285. At all times relevant hereto, Defendant KILLACKEY furnished alcoholic beverages to Plaintiff D.F., a minor, in furtherance of Defendant KILLACKEY's inappropriate, intimate, sexual, abusive, manipulative, and/or exploitative relationship with Plaintiff D.F.

286. Defendant KILLACKEY's violation of Pa. 18 Pa.C.S.A § 3124.1 (Sexual Assault) constitutes Negligence *Per Se.*

287. Defendant KILLACKEY's violation of Pa. 18 Pa.C.S.A § 3126 §A1 (Indecent Assault) constitutes Negligence *Per Se.*

288. Defendant KILLACKEY's violation of 18 Pa.C.S.A. § 6310.1 constitutes Negligence *Per Se.*

289. Plaintiff D.F. suffered significant emotional and physical harm as a direct and proximate result of the negligence, recklessness, and outrageous conduct of Defendant KILLACKEY. The negligence, recklessness, and outrageous conduct was a substantial factor in causing and did proximately cause severe and permanent injury along with past and future damages, including, but not limited to mental anguish, embarrassment, loss of self-worth, fear, flashbacks, nightmares, loss of intimacy, pain, inability to experience sexual intimacy, humiliation, loss of life's pleasures, and other physical and mental injuries presently and which may be diagnosed in the future.

290. Plaintiff D.F.'s injuries were caused solely by the negligence, recklessness, and outrageous conduct of Defendant KILLACKEY and were not caused by the Plaintiff in any part.

**WHEREFORE**, Plaintiff D.F. demands judgment in her favor, including compensatory damages and punitive damages against Defendants, including costs, damages for pre-judgment delay and any other relief the Court shall order, in excess of any applicable arbitration limits.

**COUNT VI**
**ASSAULT**
**Plaintiff D.F. v. Defendant BRENDAN J. KILLACKEY**

291.    Plaintiff incorporates by reference the preceding paragraphs of this Complaint as if fully set forth herein.

292.    Defendant KILLACKEY caused Plaintiff D.F. fear or to apprehend physical harm.

293.    Defendant KILLACKEY's sexual intercourse and/or other sexual acts with minor Plaintiff D.F. was harmful and offensive.

294.    Defendant KILLACKEY's non-consensual sexual intercourse and/or other sexual acts with minor Plaintiff D.F. was harmful and offensive.

295.    Defendant KILLACKEY'S intentional actions caused physical, mental and emotional injuries to Plaintiff D.F.

296.    Plaintiff D.F. suffered significant emotional and physical harm as a direct and proximate result of the negligence, recklessness, and outrageous conduct of Defendant KILLACKEY.  The negligence, recklessness, and outrageous conduct was a substantial factor in causing and did proximately cause severe and permanent injury along with past and future damages, including, but not limited to mental anguish, embarrassment, loss of self-worth, fear, flashbacks, nightmares, loss of intimacy, pain, inability to experience sexual intimacy, humiliation, loss of life's pleasures, and other physical and mental injuries presently and which may be diagnosed in the future.

297.    Plaintiff D.F.'s injuries were caused solely by the intentional negligence, recklessness, and outrageous conduct of Defendant KILLACKEY and were not caused by the Plaintiff in any part.

**WHEREFORE**, Plaintiff D.F. demands judgment in her favor, including compensatory damages and punitive damages against Defendants, including costs, damages for pre-judgment delay and any other relief the Court shall order, in excess of any applicable arbitration limits.

**COUNT VII**
**BATTERY**
**Plaintiff D.F. v. Defendant BRENDAN J. KILLACKEY**

298.    Plaintiff incorporates by reference the preceding paragraphs of this Complaint as if fully set forth herein.

299.    Defendant KILLACKEY intended to cause Plaintiff D.F. fear or to apprehend physical harm.

300.    Defendant KILLACKEY's sexual intercourse and/or other sexual acts with minor Plaintiff D.F. was harmful and offensive.

301.    Defendant KILLACKEY's non-consensual sexual intercourse and/or other sexual acts with minor Plaintiff D.F. was harmful and offensive.

302.    Defendant KILLACKEY'S intentional actions caused physical, mental and emotional injuries to Plaintiff D.F.

303.    Plaintiff D.F. suffered significant emotional and physical harm as a direct and proximate result of the negligence, recklessness, and outrageous conduct of Defendant KILLACKEY.  The negligence, recklessness, and outrageous conduct was a substantial factor in causing and did proximately cause severe and permanent injury along with past and future damages, including, but not limited to mental anguish, embarrassment, loss of self-worth, fear,

flashbacks, nightmares, loss of intimacy, pain, inability to experience sexual intimacy, humiliation, loss of life's pleasures, and other physical and mental injuries presently and which may be diagnosed in the future.

304.    Plaintiff D.F.'s injuries were caused solely by the intentional negligence, recklessness, and outrageous conduct of Defendant KILLACKEY and were not caused by the Plaintiff in any part.

**WHEREFORE**, Plaintiff D.F. demands judgment in her favor, including compensatory damages and punitive damages against Defendants, including costs, damages for pre-judgment delay and any other relief the Court shall order, in excess of any applicable arbitration limits.

## COUNT VIII
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### Plaintiff D.F. v. Defendant BRENDAN J. KILLACKEY

305.    Plaintiff incorporates by reference the preceding paragraphs of this Complaint as if fully set forth herein.

306.    As a direct and proximate result of the intentional conduct of Defendant KILLACKEY described above, Plaintiff D.F. suffered severe emotional distress.

307.    Plaintiff seeks compensatory and punitive damages against Defendant KILLACKEY for Defendant KILLACKEY'S malicious and/or intentional wanton and reckless acts and omissions described above.

**WHEREFORE**, Plaintiff D.F. demands judgment in her favor, including compensatory damages and punitive damages against Defendants, including costs, damages for pre-judgment delay and any other relief the Court shall order, in excess of any applicable arbitration limits.

Respectfully Submitted,

**EDELSTEIN LAW, LLP**

BY:_____
JAY L. EDELSTEIN, ESQUIRE
*Attorney for Plaintiffs*

<u>Date</u>: September 17, 2025