**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| D.F., | |
| *Plaintiff,* | CIVIL ACTION |
| v. | NO. 25-5003 |
| DNC SERVICES CORPORATION, et al., | |
| *Defendants.* | |

**Pappert, J.**                                                     **November 18, 2025**

<u>**MEMORANDUM**</u>

     D. F. was a high school student in the summer of 2012 when she volunteered with Organizing for America, an arm of the Democratic National Committee, to work on the presidential campaign.  Brendan Killackey, more than twice D. F.'s age, worked as an OFA Field Organizer in the office where D. F. volunteered.  He allegedly "groomed" D. F., leading to a sexual relationship between the two, which D. F. contends was unwanted and abusive.  She filed this lawsuit asserting negligence, assault, battery and intentional infliction of emotional distress against Killackey and negligence, civil conspiracy and aiding and abetting and vicarious liability against the DNC.

     Killackey moves to dismiss the negligence claim while the DNC seeks dismissal of all claims against it.  The Court grants the motions and dismisses with prejudice the negligence claim against Killackey and the civil conspiracy and aiding and abetting and vicarious liability claims against the DNC.  D. F. will be allowed to amend her negligence claim against the DNC one final time.

1

I

When she was a sixteen-year-old high school junior, D. F. volunteered to work for the DNC during the 2012 presidential campaign, primarily in an office in Bristol, Pennsylvania.  (Am. Compl. ¶¶ 45, 67, Dkt. No. 13.)  She signed up with Organizing for America, a "community organizing and advocacy arm" of the DNC which established local offices to perform campaign activities such as canvassing and phone banking.  (*Id.* ¶¶ 25, 28, 30.)  Brendan Killackey, then thirty-eight years old, worked in the Bristol office.  (*Id.* ¶¶ 44, 52.)  He allegedly "took an immediate and unusual interest" in D. F. and openly flirted with her, (*Id.* ¶¶ 55, 56, 60, 77, 82), referred to her as "precocious," and gave her gifts, (*Id.* ¶¶ 74, 119–20).  D. F. alleges that Killackey was "groom[ing]" her "for sexual exploitation and abuse."  (*Id.* ¶¶ 88–89.)

In June of 2012, D. F. asked staff at the Bristol office for a ride home from work, and Killackey agreed to give her one.  (*Id.* ¶¶ 90–95.)  D. F. alleges that Killackey flirted with her in his car and that she told him "she may have a crush on him."  (*Id.* ¶¶ 96, 98.)  Killackey allegedly pulled the car over and, without D. F.'s consent, touched and spoke to her in a sexual manner.  (*Id.* ¶¶ 99–102.)  D. F. alleges that later that summer, Killackey "brought [her] to his apartment" and "proceeded to initiate sexual intercourse," (*Id.* ¶¶ 125–28), after which a "sexually abusive relationship" continued throughout the summer and into the school year, (*Id.* ¶ 138).  The alleged sexual abuse happened in Killackey's car, at his apartment or in public parks.  (*Id.* ¶¶ 99–102, 124–28, 163–65, 168.)  D. F. did not reveal the relationship or the abuse to the DNC or to any staff in the Bristol office.  (*Id.* ¶¶ 171, 235.)

D. F. alleges in Count I of her amended complaint that the DNC was negligent in its hiring, supervision or retention of Killackey and in its failure to report suspected child abuse. (*Id.* ¶¶ 241–53.) In Count II she claims the DNC engaged in a civil conspiracy or aided and abetted Killackey to conceal his conduct. (*Id.* ¶¶ 254–71.) D. F. alleges in Count III that the DNC is vicariously liable for Killackey's conduct. (*Id.* ¶¶ 272–77.) She alleges negligence against Killackey in Count IV, (*Id.* ¶¶ 278–90), and in Counts VI–VIII that he committed the torts of assault, battery and intentional infliction of emotional distress, (*Id.* ¶¶ 291–307).[1]

## II

The Court assesses the sufficiency of a pleading before discovery under Federal Civil Rules 8 and 12. Rule 8(a)(2) provides that a complaint "must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). And Rule 12(b)(6) permits a district court to dismiss a complaint that fails "to state a claim upon which relief can be granted." *Id.* 12(b)(6). Taken together, the two rules require the plaintiff to allege sufficient "facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The first step in determining whether a plaintiff has stated a plausible claim is to "tak[e] note of the elements" underlying his claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009); *Santiago v. Warminster Township*, 629 F.3d 121, 129–30 (3d Cir. 2010). The second step is to examine the plaintiff's complaint and determine whether the factual allegations "plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679.

---

[1]    The Amended Complaint does not include a Count V.

Plausibility requires the plaintiff to plead sufficient facts to allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. The reasonableness of an inference depends on common sense and the strength of competing explanations for the defendant's conduct. *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 786–87 (3d Cir. 2016); *Iqbal*, 556 U.S. at 682. Plaintiffs do not meet the plausibility burden when the facts alleged are "merely consistent with a defendant's liability" or show nothing "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quotation marks and citation omitted). In gauging the plausibility of a claim, the Court must accept as true all well-pleaded factual allegations, construe those facts in the light most favorable to the plaintiff, and draw reasonable inferences from them. *Connelly*, 809 F.3d at 786 n.2.

### III

### A

D. F. first alleges that the DNC was negligent in its hiring, supervision or retention of Killackey, (Am. Compl. ¶ 247), and in its failure to report suspected child abuse, (*Id.* ¶ 246). She fails to state a claim under either theory.[2]

---

[2]    Setting aside the legal insufficiency of D. F.'s negligence claim against DNC, the claim is flawed because it employs a "shotgun pleading" strategy with insufficient factual support for many of its assertions. *See* (Am. Compl. ¶¶ 248 a–mm). For example, D. F. repeatedly mentions "prior complaints" about Killackey, (*Id.* ¶¶ 248 v–x), but alleges no facts which could show that anyone made such complaints or that the DNC knew or should have known about them. D. F. also criticizes the absence of a monitoring system for "student-residents" at a "football camp," an allegation apparently copied and pasted from a different complaint. (*Id.* ¶ 274.) The Third Circuit Court of Appeals disfavors the shotgun pleading approach. *Hynson v. City of Chester Legal Dep't*, 864 F.2d 1026, 1031 n.13 (3d Cir. 1988); *Bartol v. Barrowclough*, 251 F. Supp. 3d 855, 859 (E.D. Pa. 2017). D. F.'s shotgun approach results in these claims being presented as a jumbled hash of allegations, leaving to the Court the task of separating and assessing each of them.

1

Employers have a duty to "exercise reasonable care in selecting, supervising and controlling employees" acting outside the scope of their employment. *R.A. ex rel. N.A. v. First Church of Christ*, 748 A.2d 692, 697 (Pa. Super. Ct. 2000) (citing the Restatement (Second) of Torts, § 317 (1965)). To state such a claim, a plaintiff must allege

> (1) a failure to exercise ordinary care to prevent an intentional harm by an employee acting outside the scope of his employment, (2) that is committed on the employer's premises, (3) when the employer knows or has reason to know of the necessity and ability to control the employee.

*Belmont v. MB Inv. Partners, Inc.*, 708 F.3d 470, 487–88 (3d Cir. 2013) (citing *Dempsey v. Walso Bureau, Inc.*, 246 A.2d 418, 420 (Pa. 1968); *Heller v. Patwil Homes, Inc.*, 713 A.2d 105, 107–08 (Pa. Super. Ct. 1998)).

To state a claim for negligent hiring, a plaintiff must show that an employer hired an applicant despite knowledge of their "propensity for misconduct." *Fusco v. Uber Techs., Inc.*, No. 17-36, 2018 WL 3618232, at *4 (E.D. Pa. July 27, 2018). A claim for negligent retention must allege that an employer elected not to dismiss an employee after learning of a "dangerous tendency." And a claim for negligent supervision must allege that an employer "knew or should have known of a need to supervise the employee, and that, by failing to do so, exposed the plaintiff to the employee's misbehavior." *Id.* The Court interprets the gravamen of D. F.'s claim to be that the DNC was negligent in its supervision of Killackey.

To state such a claim, D. F. must allege facts sufficient to satisfy two separate inquiries. First, that Killackey harmed her on DNC premises or on premises to which Killackey gained access via his employment, *R.A. ex rel. N.A.*, 748 A.2d at 699, and

second, that the DNC could have foreseen the need to control Killackey and that the harm he allegedly caused was reasonably foreseeable, *Belmont*, 708 F.3d at 491.

i

None of Killackey's alleged misconduct took place at the Bristol Campaign office. D. F. claims Killackey exhibited *unprofessional* conduct on DNC's premises: he flirted with her, (Am. Compl. ¶¶ 55, 60, 76, 77, 82), sang a suggestive song about her, (*Id.* ¶ 148), called her "precocious," (*Id.* ¶ 74), gave her gifts, (*Id.* ¶¶ 119, 120), and made business calls that D. F. joined from his office with the door closed, (*Id.* ¶ 179). D. F. also alleges that she and Killackey "openly held each other" and "behave[ed] like boyfriend and girlfriend" at a post-election celebration in Washington, D.C. (*Id.* ¶¶ 210–11.) But D. F. claims the alleged sexual conduct—the abuse—took place in Killackey's apartment, his car or in public parks. (*Id.* ¶¶ 99–102, 124–28, 163–65, 168.) The DNC does not have a duty to supervise its employees at their homes, in their cars or in public parks. *See R.A. ex rel. N.A.*, 748 A. 2d at 699 ("[T]he Church can have no liability [for failing to exercise reasonable care to control its employee] . . . because none of the harm was caused on Church premises or on premises to which [the defendant] gained admittance only as a Church employee.")

D. F. characterizes Killackey's conduct on DNC's premises as "grooming," (*Id.* ¶ 88), but none of his alleged on-premises actions were tortious. *Cf. Doe v. Liberatore*, 478 F. Supp. 2d 742, 750, 761–62 (M.D. Pa. 2007) (discussing grooming behavior that included a minor plaintiff sleeping in defendant's rectory room, where sexual abuse also occurred.) To state a claim for negligent supervision, D. F. must allege that Killackey

6

committed an intentional tort on DNC's premises or on premises to which he was privileged to access via his employment. *Dempsey*, 246 A.2d at 420. She does not.

ii

In addition to the premises requirement, negligent supervision claims must satisfy two foreseeability requirements. First, the employer may be liable if "it knew or should have known the necessity" for controlling their employee based on "dangerous propensities that might cause harm to a third party." *Belmont v. MB Inv. Partners, Inc.*, 708 F.3d 470, 491 (3d Cir. 2013) (quotation marks and citations omitted). Second, the harm that the "improperly supervised employee caused" must be reasonably foreseeable. *Id.* Here, the foreseeability inquiry focuses on Killackey's alleged unwanted sexual acts which are the source of D. F.'s alleged harm. (Am. Compl. ¶¶ 293–94, 300–01.) [3]

The DNC could not, based on the amended complaint's allegations, have known Killackey had a propensity to commit sexual abuse. An employer's knowledge of its employee's potential to commit tortious acts is established by "prior conduct," which must be "of such nature as to indicate a propensity." *Dempsey*, 246 A.2d at 422; *see also Heller*, 713 A.2d at 108. D. F. does not allege any facts which could show that Killackey possessed a propensity to commit sexual abuse while employed in the Bristol office. His

---

[3] The two foreseeability inquiries are described by cases defining negligent supervision in Pennsylvania. *Petruska v. Gannon Univ.*, 462 F.3d 294, 309 n. 14 (3d Cir. 2006); *Dempsey*, 246 A.2d at 420. The requirement set forth in *Dempsey* that an employer knew or should have known the necessity to control their employee to prevent the employee's tortious conduct. *Belmont*, 708 F. 3d at 488 n. 24. The requirement described in *Petruska* that the harm itself be foreseeable "stresses the foreseeability of the harm the employee causes" and is derived from the "requirements of an action of tort for negligence." *Id.* As discussed *infra*, foreseeability of the harm and DNC's foreseeability of the need to control Killackey are intertwined.

7

conduct in the presence of DNC staff is not "the same kind of act[]" as the alleged sexual abuse. *Dempsey*, 246 A.2d at 422.

D. F. concedes that no one with the DNC had *actual* knowledge of Killackey's propensity to commit harm. She alleges that she told no one with the DNC about the nature of their relationship, (*Id.* ¶¶ 171, 235), and that the DNC never discovered it, (*Id.* ¶ 248(g)). D. F. claims only the DNC should have known Killackey had a propensity to sexually abuse her because DNC staff was aware that:

- Killackey was flirtatious with D. F. and called her "precocious," (*Id.* ¶¶ 55, 74, 77, 82);

- Killackey agreed to give D. F. a ride home, (*Id.* ¶ 93);

- D. F. and Killackey went canvassing together, (*Id.* ¶ 110);

- Killackey gave D. F. a book and other unidentified gifts, (*Id.* ¶¶ 119–20);

- Killackey exchanged text messages with D. F. on his personal phone, (*Id.* ¶¶ 144–46);

- Killackey sang a suggestive song from a movie after D. F. made a reference to the film, (*Id.* ¶¶ 147–48);

- D. F. and Killackey sat in his office with the door closed while he made calls, (*Id.* ¶¶ 178–79);

- D. F. joined DNC staff to watch election results at a bar, where she and Killackey sat next to each other, (*Id.* ¶¶ 184, 189);

- At an inaugural ball in Washington, DC, the two "held each other" and "openly behav[ed] like boyfriend and girlfriend," (*Id.* ¶¶ 210–11).

The prior conduct need not be an exact match for the tortious conduct, but the employee "must have committed prior acts of the same general nature as the one for which the plaintiff brings suit—acts that show the employee is 'vicious or dangerous and . . . intended to inflict injury upon others.'" *Sabic v. Lockheed Martin*, 532 F. App'x

286, 291 (3d Cir. 2013) (quoting *Dempsey*, 246 A.2d at 423).  While D. F.'s allegations could allow the inference that DNC staff witnessed unprofessional conduct in the workplace, they do not establish that the staff should have foreseen Killackey might sexually abuse her outside the workplace.  *See Henry v. Marcelin*, 2024 WL 4293055, at *4 (E.D. Pa. Sept 25, 2024) (dismissing a claim for negligent supervision where the plaintiff "fail[ed] to identify any past misconduct that would put a reasonable employer on notice of an employee's propensity for dangerous activity.")  And the harm Killackey allegedly caused was not reasonably foreseeable for the same reasons the DNC could not have known of Killackey's propensity to commit sexual abuse.  "A harm is foreseeable if it is part of a general type of injury that has a reasonable likelihood of occurring."  *Belmont v. MB Inv. Partners, Inc.*, 708 F.3d 470, 491 (3d Cir. 2013).  D. F. has not alleged facts to plausibly establish that the harm—Killackey's alleged sexual abuse—was reasonably foreseeable.

D. F. fails to state a negligence claim against the DNC because none of the alleged harm occurred on DNC premises and the DNC could not have known Killackey had the propensity to sexually abuse her.

2

The claim of negligent failure to report child abuse fails for the same reason: D. F. insufficiently alleges the DNC had reason to suspect Killackey's alleged abuse. Certain adults have an affirmative duty to report child abuse to authorities if they have "reasonable cause to suspect that a child is a victim of child abuse."  23 Pa. Cons. Stat. § 6311(b)(1).  A failure to do so may establish the duty and breach components of negligence, *i.e.,* may establish negligence *per se*.  *See J.E.J. v. Tri-Cnty. Big*

*Brothers/Big Sisters, Inc.*, 692 A.2d 582, 585 (Pa. Super. Ct. 1997). But D. F. does not allege facts that could show DNC staff had reason to suspect child abuse. Again, at most, D. F. alleges DNC staff were aware of Killackey's unprofessional conduct—not that they were aware of the alleged abuse, which took place away from the workplace and which D. F. never mentioned or alluded to. *See supra* subsection III.A.1.

B

D. F. next alleges the DNC engaged in a civil conspiracy with Killackey and aided and abetted him in the commission of a tort. (Am. Compl. ¶¶ 254–71.) The amended complaint fails to allege sufficient facts to support either theory.

To state a civil conspiracy claim, a plaintiff must allege that "two or more persons combined or agreed with intent to do an unlawful act." *Thompson Coal Co. v. Pike Coal Co.*, 412 A.2d 466, 472 (Pa. 1979). D. F. alleges no facts to support the inference that anyone at the DNC agreed, among themselves or with Killackey, to perform an unlawful act. D. F. contends at most that DNC staff should have known Killackey was performing unlawful acts, something that even if true does not establish that staff were in on it with him. And to aid and abet the commission of a tort, the defendant must have "actual knowledge" of the tort, which knowledge may be inferred by "willful blindness." *Marion v. Bryn Mawr Tr. Co.*, 288 A.3d 76, 91 (Pa. 2023). As discussed *supra*, D. F. insufficiently alleges that the DNC knew or should have known of Killackey's tortious conduct and alleges no facts from which the Court could reasonably infer the DNC was "willfully blind" to Killackey's alleged sexual misconduct.

D. F. claims next that the DNC is vicariously liable for Killackey's alleged sexual abuse. (Am. Compl. ¶¶ 272–77.) An employer may be vicariously liable for its

10

employees' tortious acts committed during the scope of their employment. *Adams v. U.S. Airways Group, Inc.*, 978 F. Supp. 2d 485, 497 (E.D. Pa. 2013). But if "an assault is committed for personal reasons or in an outrageous manner, it . . . is not done within the scope of employment." *Sanchez by Rivera v. Montanez*, 645 A.2d 383, 391 (Pa. Commw. Ct. 1994). Pennsylvania courts "have consistently held that sexual abuse of minors falls outside an employee's scope of employment." *Doe v. Pa. State Univ.*, 982 F. Supp. 2d 437, 442 (E.D. Pa. 2013). D. F. fails to allege that Killackey's conduct was "actuated by any purpose of serving" his employer and she therefore fails to state a claim for the DNC's vicarious liability. *Doe v. Liberatore*, 478 F. Supp. 2d 742, 758 (M.D. Pa. 2007).

## IV

D. F. alleges Killackey negligently harmed her. (Am. Compl. ¶¶ 278–90.) This claim sounds in ordinary negligence notwithstanding D. F.'s invocation of negligence *per se*, (*Id.* ¶¶ 286–88). *Simmons v. Simpson House, Inc.*, 224 F. Supp. 3d 406, 413 (E.D. Pa. 2016) (explaining that negligence *per se* is not a separate cause of action but an evidentiary theory of liability). D. F. recites the Pennsylvania criminal statutes defining sexual assault, indecent assault, corruption of minors and furnishing alcohol to minors. (*Id.* ¶¶ 279–83.) Of these four, she claims only that sexual assault, indecent assault and furnishing alcohol to minors establish Killackey's negligence *per se*. (*Id.* ¶¶ 286–88.)

The statute prohibiting furnishing alcohol to minors may allow for a negligence *per se* claim. *Congini v. Portersville Valve Co.*, 470 A.2d 515, 518 (Pa. 1983). But the harm associated with an adult's negligent furnishing of alcohol to a minor is ordinarily

the result of an accident. *See id.* at 516 (where intoxicated minor caused a car accident); *see also Matthews v. Konieczny*, 527 A.2d 508, 510 (Pa. 1987) (same); *and see Orner v. Mallick*, 527 A.2d 521, 522 (where intoxicated minor fell over a second-story railing). In contrast, D. F. alleges that Killackey furnished alcohol "in furtherance" of his sexual abuse, (Am. Compl. ¶ 285), for the *intentional* purpose of "lower[ing] her inhibitions," (*Id.* ¶ 150). Taking D. F.'s allegations as true, Killackey's furnishing of alcohol is part and parcel of his alleged intentional sexual abuse and may not form the predicate for a separate negligence claim.

D. F. also fails to state a negligence claim against Killackey for sexual or indecent assault. A plaintiff may not recover in negligence "for injuries suffered as a result of the commission by a tortfeasor of the intentional torts of assault and battery." *Aetna Cas. & Sur. Co. v. Roe*, 650 A.2d 94, 103 (Pa. Super. Ct. 1994); *see also Isaac v. Jameson Mem. Hosp.*, 932 A.2d 924, 929 (Pa. Super. Ct. 2007) ("[N]egligence principles generally do not apply" to intentional torts). D. F.'s allegations of sexual abuse are irreconcilable with a negligence claim.

V

A court should "freely give leave" to amend "when justice so requires." Fed. R. Civ. P. 15(a)(2); *USX Corp. v. Barnhart*, 395 F.3d 161, 166 (3d Cir. 2004). Leave to amend should be "liberally granted" unless amendment would cause "substantial prejudice" to the nonmoving party. *Long v. Wilson*, 393 F.3d 390, 400 (3d Cir. 2004). Absent substantial prejudice, amendment should be granted unless the plaintiff has exhibited bad faith or undue delay, or amendment would be futile. *Lorenz v. CSX Corp.*, 1 F.3d 1406, 1414 (3d Cir. 1993). Amendment is futile when "the complaint, as

amended, would fail to state a claim upon which relief could be granted." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997). The decision whether to grant or deny leave to amend is within the sound discretion of the district court. *Cureton v. Nat'l Collegiate Athletic Ass'n*, 252 F.3d 267, 272 (3d Cir. 2001).

Granting leave to amend would not cause substantial prejudice, and the Court cannot say at this point that amendment of the negligence claim against the DNC would be futile. D. F. may amend that claim one last time if she can allege facts which could overcome the shortcomings identified in this Memorandum.

An appropriate Order follows.

BY THE COURT:

*/s/ Gerald J. Pappert*
Gerald J. Pappert, J.