# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| D.F., | |
| *Plaintiff,* | CIVIL ACTION |
| v. | NO. 25-5003 |
| DNC SERVICES CORPORATION, et al., | |
| *Defendants.* | |

## ORDER

**AND NOW**, this 12th day of February 2026, upon consideration of Plaintiff

D. F.'s Second Amended Complaint, (Dkt. No. 27), the Motion to Dismiss filed by DNC

Services Corporation, (Dkt. No. 34), Plaintiff's Response, (Dkt. No. 35), and DNC's

Reply, (Dkt. No. 36), it is **ORDERED** that the Motion is **DENIED in part:**

    1. The motion is **DENIED** as to Count I, alleging negligence against the

       DNC.[1]

---

[1]    The Court previously dismissed D. F.'s negligent supervision claim against the DNC without prejudice because D. F. did not allege facts which could show the DNC could have known Brendan Killackey had the propensity to sexually abuse her and none of the alleged harm occurred on DNC premises. *D.F. v. DNC Servs. Corp.*, No. 25-5003, 2025 WL 3217750, at *5 (E.D. Pa. Nov. 18, 2025).

    The Second Amended Complaint alleges facts which now allow for the inference that the DNC knew Killackey was sexually abusing her while she was a minor volunteer. D. F. now claims that, after she turned eighteen, she began a sexual relationship with Brendan McPhillips, the Field Director and supervisor of the Bristol campaign office when D. F. volunteered there. (Second Am. Compl. ¶¶ 172–74, Dkt. No. 27.) When she told McPhillips she had a sexually abusive relationship with Killackey as a sixteen-year-old, he allegedly said he "had a feeling" and was "not surprised." (*Id.* ¶¶ 174–77.) Taking this as true and construing the allegations in the light most favorable to her permits the inference that McPhillips knew Killackey was sexually abusing her while she was a sixteen-year-old volunteer.

    The DNC does not dispute D. F.'s argument that McPhillips's knowledge is imputed to the DNC. (Pl.'s Resp. in Opp'n at 19–20, Dkt. No. 35.) Negligent supervision claims must satisfy two foreseeability requirements. First, the employer may be liable if "it knew or should have known the necessity" for controlling its employee based on "dangerous propensities that might cause harm to a third party." *Belmont v. MB Inv. Partners, Inc.*, 708 F.3d 470, 491 (3d Cir. 2013) (quotation marks and citations omitted). Second, the harm that the "improperly supervised employee caused" must be

2.  Count II, alleging vicarious liability against the DNC, remains

**DISMISSED with prejudice**.[2]

BY THE COURT:

**_/s/ Gerald J. Pappert_**
Gerald J. Pappert, J.

---

reasonably foreseeable.  *Id.*  D. F.'s Second Amended Complaint does just enough to allege both foreseeability requirements.

D. F.'s First Amended Complaint used a "shotgun pleading" strategy, "leaving to the Court the task of separating and assessing" each claim from a "jumbled hash of allegations."  *D.F. v. DNC*, 2025 WL 3217750 at *2 n.2.  The Court interpreted her negligence claim to allege the DNC was negligent in its supervision of Killackey.  *Id.*, at *3.  D. F. supported her claim by reference to Restatement (Second) of Torts Section 317, which describes an employer's duty to control its employees acting outside the scope of their employment.  *Dempsey v. Walso Bureau, Inc.*, 246 A.2d 418, 419–20 (Pa. 1968).  To trigger an employer's duty to control under Section 317, the employee must be on the employer's premises when he intentionally harms another.  *Id.*  Because none of the sexual abuse D. F. alleged in the First Amended Complaint happened on DNC's premises or on premises to which Killackey was privileged to access via his employment, the Court found D. F. could not be liable under Section 317.  *D.F. v. DNC*, 2025 WL 3217750 at *3.

D. F. now alleges a broader theory of negligence.  *See* (Pl.'s Resp. in Opp'n at 23–24.)  She claims the DNC knew Killackey was sexually abusing a minor volunteer and therefore had a duty to intervene.  (*Id.* at 22.)  D. F. argues DNC's duty was not only to supervise Killackey—as described in Section 317—but to protect her from foreseeable risks created in the workplace.  (Second Am. Compl. ¶ 187.)

"An employer may be negligent if he knew or should have known that his employee had a propensity for violence and such employment might create a situation where the violence would harm a third person."  *Hutchinson v. Luddy*, 742 A.2d 1052, 1057–58 (Pa. 1999) (quoting *Coath v. Jones*, 419 A.2d 1249, 1250 (Pa. Super. 1980)) (criticizing over-reliance on Section 317, emphasizing the importance of foreseeability and citing out of state caselaw which found an employer could be held liable for an employee's sexual abuse of students, "regardless of whether the abuse took place on the [employer's] premises.")  D. F.'s allegation that DNC knew of Killackey's sexual abuse "nudge[s]" her negligence claim "from conceivable to plausible."  *Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009).

The same goes for D. F.'s allegation that DNC negligently failed to report suspected child abuse.  Certain adults have an affirmative duty to report child abuse to authorities if they have "reasonable cause to suspect that a child is a victim of child abuse."  23 Pa. Stat. and Cons. Stat. Ann. § 6311(b)(1).  A failure to do so may establish the duty and breach components of negligence, *i.e.*, may establish negligence *per se*.  *See J.E.J. v. Tri-Cnty. Big Brothers/Big Sisters, Inc.*, 692 A.2d 582, 585 (Pa. Super. Ct. 1997).  The DNC argues D. F. fails to state a claim because she does not allege anyone at DNC had reasonable cause to suspect abuse and that the failure to report did not cause D. F.'s injuries.  (DNC's Reply at 4.)  Given D. F.'s allegation that McPhillips knew about Killackey's alleged abuse, the Court cannot at this time say the DNC had no duty to report it.

---

[2]     The Court previously dismissed D. F.'s vicarious liability claim with prejudice.  (Dkt. Nos. 25 & 26.)  Although D. F. reasserts it in her Second Amended Complaint, she abandons the claim in her Response.  (Pl.'s Resp. in Opp'n at 25.)